**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CAROL ANN HENDRY,

      Plaintiff-Appellee,

v.

DEWEY SCHNEIDER,

      Defendant-Appellant.

No. 95-8049

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 93-CV-42)**

---

R. Kimball Mosier, Parsons, Davies, Kinghorn & Peters, Salt Lake City, Utah, for Defendant-Appellant.

Bruce S. Asay (Bernard P. Haggerty with him on the brief), Murane & Bostwick, Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **ANDERSON**, **Circuit Judge, BRISCOE, Circuit Judge,** and **McWILLIAMS**, **Senior Circuit Judge.**

---

**McWILLIAMS, Senior Circuit Judge.**

---

The chronology out of which the present controversy arises is essential to an understanding of our resolution of the issues raised on appeal. On or about February 3,

1993, Carol Ann Hendry filed the present action in the United States District Court for the District of Wyoming. On February 12, 1993, Hendry filed an amended complaint in the same court. Named as defendants in the amended complaint were Dewey Schneider ("Schneider"), Union Pacific Railroad Company ("UP") and Lodging Enterprises, Inc., doing business as Green River Railroad Inn ("Inn").

In her amended complaint, Hendry alleged that she was employed as a waitress by the Inn in Green River, Wyoming. In this regard, Hendry went on to allege that the Inn was under contract with UP to provide meals and lodging for those UP employees traveling through Green River. According to the amended complaint, Schneider was an engineer employed by UP who often frequented the Inn as a part of his employment with UP. Without going into unnecessary detail, Hendry alleged that on the evening of April 20, 1992, Schneider was working as an engineer for UP when he registered at the Inn to obtain crew rest, and that at about 1:30 a.m. on April 21, 1992, Schneider, in an intoxicated condition, came into the restaurant where she was working and began harassing her, making sexual remarks and that he then "exposed himself" to her. The amended complaint also went on the state that thereafter Schneider continued his sexual harassment of her over a period of several months.

Hendry's amended complaint was based on Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), et. seq., Chapter IX of Title XXVII of the Wyoming Statutes, and the Common Law of Wyoming. On September 14, 1993, the district court granted UP's

- 2 -

motion for summary judgment and at the same dismissed Hendry's action against the Inn. *Hendry v. Schneider*, No. 93-CV-0042-B, 1993 WL 443815 (D. Wyo. Sept. 14, 1993). Hendry has not appealed those orders. Hence, we are now only concerned with Hendry's claims against Schneider, all of which were state claims.

Schneider, a resident of Utah, was served with a summons and complaint in Wyoming on August 7, 1993, 176 days after Hendry filed her amended complaint and 56 days beyond the 120 day time limit provided for in Fed. R. Civ. P. 4(j), the applicable rule then in effect. Hendry did not file a motion for an extension of time to effect service on Schneider as provided in Fed. R. Civ. P. 6(b), although on July 7, 1993, she did file a precipe for alias summons and complaint, which the court issued that same date.

As above stated, Schneider was served a summons and complaint on August 7, 1993, and, under Fed. R. Civ. P. 12(a)(1)(A), Schneider had 20 days to respond thereto. He did not respond within 20 days, and on September 3, 1993, Hendry filed a motion for default judgment against Schneider with the district court. In that motion, counsel for Hendry stated that, although the amended complaint was filed on February 12, 1993, he was unable to obtain service on Schneider until August 7, 1993. He then set forth in considerable detail his unsuccessful efforts to serve Schneider at an earlier date. Counsel's affidavit was affixed to that motion. Counsel then went on to state that, after having been served with process on August 7, 1993, Schneider had not filed a response thereto within 20 days, i.e., August 27, 1993, as required by Fed. R. Civ. P. 12(a)(1)(A)

and, pursuant to Fed. R. Civ. P. 55(b), moved for entry of default judgment against Schneider.

On September 7, 1993, a person representing himself as counsel for Schneider, telephonically contacted a United States Magistrate Judge in Wyoming, who, upon request, granted Schneider an extension of time until September 13, 1993, to respond to the amended complaint. The extension, however, was labeled by the magistrate judge as "conditionally--the extension will not preclude plaintiff from pursuing motion for default."

On September 13, 1993, counsel for Schneider filed a motion to dismiss Hendry's amended complaint. In that motion, counsel for Schneider noted, *inter alia,* that service had not been obtained on Schneider until August 7, 1993, more than 120 days after the filing of Hendry's amended complaint on February 12, 1993. On the date Schneider filed his motion to dismiss, i.e., September 13, 1993, Fed. R. Civ. P. 4(j) (replaced on December 1, 1993, by Fed. R. Civ. P. 4(m)) was the applicable rule.[1]

---

[1]Fed. R. Civ. P. 4(j) provided as follows:

> Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

* * *

On January 19, 1994, Hendry filed a response in opposition to Schneider's motion to dismiss and also asked for a hearing on her motion for default judgment. In that motion, counsel again explained why Schneider was not served within 120 days from February 12, 1993, the date when the amended complaint was filed, and alleged that during that period of time Schneider had "willfully and intentionally avoided service of process." Counsel concluded by asking the district court to deny Schneider's motion to dismiss and to set a hearing on Hendry's motion for default judgment.

On November 4, 1994, a hearing was held at the conclusion of which the district court granted Hendry's motion for entry of default and took Schneider's motion to dismiss under advisement. At the same time, the district court requested supplemental briefing on the question of whether the magistrate judge had authority to grant Schneider an extension of time to file a response to the amended complaint. On November 14, 1994, Hendry filed a memorandum in further support of her motion for entry of default

Fed. R. Civ. P. 4(m) provides as follows:

> Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

* * *

judgment, specifically addressing the issue of the magistrate judge's authority to extend Schneider's time to answer. On November 15, 1994, Schneider filed a memorandum in opposition to the district court's declaration of default.

On January 9, 1995, the district court reaffirmed its order of November 4, 1994, and allowed its order of default to stand. It then proceeded to set a hearing to determine the amount of damages. As concerns Schneider's motion to dismiss, the district court, pursuant to Fed. R. Civ. P. 12(f), "struck" the motion, holding that it was not only untimely, but also was "without legal merit." In reaffirming its prior order of default, as well as striking Schneider's motion to dismiss the amended complaint, the district court held that Schneider's "evasion of service" constituted "good cause" for Hendry's failure to serve within 120 days. The court also noted that such tended to negate Schneider's claim that in seeking an extension of time to respond to the summons and complaint, he, himself, was acting in "good faith." Further, the district court made note of the fact that the extension order of the magistrate judge explicitly stated that it was "conditional" only, and that Hendry could pursue her motion for default, which was filed four days before the extension was sought.

A hearing was held on April 24, 1995 to determine Hendry's damages. At the hearing, both Hendry and her new husband testified. Schneider was not personally present and no witness was called on his behalf. Hendry testified as to her loss of income, as well as to her great emotional stress caused by Schneider's continued

- 6 -

harassment. She also testified as to her "counselling sessions," and the cost thereof. Her husband then testified concerning his wife's "emotional scars." As indicated, Schneider was not present at the hearing, nor were any witnesses called on his behalf. It was on such state of the record that the district court entered judgment in favor of Hendry in the amount of $50,000 as compensatory damages. Hendry sought three times that amount as punitive damages, i.e., $150,000. The district court, however, only awarded punitive damages in the amount of $10,000. Schneider appeals the judgment thus entered. We find no error and affirm.

Schneider's position on appeal is that the district court erred in entering an order holding him in default because service was not effected within 120 days from the date when the amended complaint was filed, and, for that reason, and others, the district court should have granted his motion to dismiss the amended complaint. Schneider further argues that the district court erred in fixing Hendry's compensatory damages at $50,000 because the court erroneously admitted into evidence, over objection, excerpts of testimony by Dr. Douglas Goff, a clinical psychologist who treated Hendry, given at his deposition to which he (Schneider) was not a party.

We, parenthetically, note that under the "old" Rule 4(j) if service of summons and complaint is not made within 120 days after filing of the complaint, and the plaintiff cannot show good cause for such failure to thus serve, the action shall be dismissed without prejudice, upon the court's own initiative with notice to the plaintiff or upon

motion.  The "new" Rule 4(m), which replaced the "old" Rule 4(j) on December 1, 1993, similarly provides that if service of process is not made upon a defendant within 120 days after filing of the complaint, the district court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice.  In addition, Rule 4(m) goes on to state that the court may direct that service be effected within a specified time, if the plaintiff shows "good cause" for the failure to serve.

In *Espinoza v. United States,* 52 F.3d 838 (10th Cir. 1995), we held that the "new" Rule 4(m) was to be given retroactive application.  We further held in *Espinoza* that the "old" Rule 4(j) only allowed a court to extend the time for service of process upon a showing of "good cause," whereas the "new" Rule 4(m) "broadens the district court's discretion by allowing it to extend the time for service even when the plaintiff has not shown good cause." *Espinoza*, 52 F.3d at 840-41.

The distinction thus drawn by us in *Espinoza* has no particular application to the instant case, since the district court, as we understand it, held that counsel for Hendry did show "good cause" for his inability to timely serve Schneider.  Our scope of review applicable to this "good cause" determination is whether the court abused its discretion. "It is, of course, well-established that 'good cause' determinations entail discretionary conclusions by the district court and will not be disturbed absent an abuse of discretion." *Floyd v. United States,* 900 F.2d 1045, 1046 (7th Cir. 1990).  The trial court abuses its discretion in determining whether there is "good cause" if its decision is arbitrary,

capricious, or whimsical. *Cox v. Sandia Corp.,* 941 F.2d 1124, 1125 (10th Cir. 1991). In the instant case, the district court's "good cause" finding is not arbitrary, capricious, or whimsical.[2]

In his motion for default judgment and again at the hearing held on November 4, 1994, counsel advised the court, in detail, of his unsuccessful efforts to serve Schneider. Such supports the district court's finding that Schneider was, in fact, avoiding service of process, with considerable success. In this regard, we should note that Hendry's amended complaint was never dismissed by the district court, nor had the district court given Hendry any notice that it was even considering a dismissal for failure to timely serve.[3]

---

[2]Evasion of service has been held to constitute "good cause." *See Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991); *Ruiz Varela v. Sanchez Velez*, 814 F.2d 821, 823-24 (1st Cir. 1987); *Wei v. State of Hawaii*, 763 F.2d 370, 371 (9th Cir. 1985).

[3]In this connection, comment by the Sixth Circuit in *United States v. Gluklick*, 801 F.2d 834, 837 (6th Cir. 1986), concerning the "old" Rule 4(j), has present pertinence and reads as follows:

> Defendants argue that at the time they agreed to accept service they were unaware that 120 days had passed since the filing of the complaint, and, that, therefore, service might be defective. Rule 4(j) renders dismissal after 120 days mandatory rather than discretionary in the absence of good cause or a request for extension of time. (citations omitted). However,
>
>> [a] dismissal for failure to effect service during the 120 days, or for making service improperly if that's the ground, requires a motion. If the motion is made by the defendant, it would of course have to be on notice to the plaintiff. Rule 5(a). If the court is disposed to dismiss sua sponte, which it can do under subdivision (j), the court itself must assure that the plaintiff has notice of its proposed action.
>
> Siegel, Practice Commentaries on FRCP Rule 4 C4-35, reprinted at 28 U.S.C.A. Fed. R. Civ. P. 4 at 55 (Supp. 1986). Accordingly, Rule 4(j) does not automatically render service void when, as in this case, it is clear that neither the court nor the defendants moved for dismissal based on inadequate service. See 2

As indicated, Schneider was served with process on August 7, 1993. Under Fed. R. Civ. P. 12(a)(1)(A), Schneider had 20 days to respond to the summons and complaint. He did not so do, and on September 3, 1993, Hendry filed a motion to enter default judgment against Schneider. Four days later, on September 7, 1993, local Wyoming counsel contacted the magistrate judge and obtained a "conditional" extension of time until September 13, 1993, to respond to the amended complaint, the "condition" being that the extension did not preclude Hendry from pursuing her motion for default filed four days before.

On this state of the record, Hendry did pursue her motion for entry of default against Schneider. Schneider's basic ground for objecting to the entry of default was that service was not effected within 120 days from the filing of the amended complaint, a matter we have considered *infra.*

After the hearing, the district court struck Schneider's motion to dismiss, concluding that it was not timely filed and that there was no showing of "excusable neglect," which is perhaps another way of saying "no good faith." The district court then went on to add that the motion to dismiss itself was "without legal merit." We agree. The district court did not err in striking Schneider's motion to dismiss and entering a default order against him.

---

Moore's Federal Practice, § 4.46 at 4-575 (1985) ("if the 120th day passed and service has not been made, the plaintiff may await a motion or notice of intention to dismiss").

Schneider also asserts, on appeal, that the district court erred in entering judgment against him for $50,000 in compensatory damages. He claims that the district court erred in admitting parts of Dr. Douglas Goff's deposition. Over objection, the district court admitted excerpts of Dr. Goff's deposition "for what it's worth." Apparently, it wasn't worth very much, as the district court in its order and judgment awarding Hendry $50,000 as compensatory damages made <u>no</u> mention of Dr. Goff, but did mention, and rely on, the testimony of Hendry and her husband.

In any event, we are convinced that the district court's award of $50,000 as compensatory damages is supported by the record. Hendry's testimony given at the hearing on her motion for default held on November 4, 1994, concerning Schneider's extreme and continuing sexual harassment of her, which conduct apparently has never been denied, paints a dark picture. The district court characterized Schneider's conduct as "Neanderthal."[4] We agree.

Judgment affirmed.

---

[4] "Neanderthal . . . (2): a rugged or uncouth person: cave man." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1509 (3d ed. 1981).