**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WAYLON EUGENE MAY,

      Plaintiff-Appellant,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS; DENNIS COTNER;
JUDY WAKEN; K. RADER, RN;
GRIFFIN MEMORIAL HOSPITAL;
JOHN DOE, MD #1; JOHN DOE, MD
#2; JOHN DOE, MD #3;
C. MONTALVO, RN; JANE DOE,
PA,

      Defendants-Appellees.

No. 99-6267
(D.C. No. 98-CIV-633)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore,

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

appellant's request for oral argument is denied, and the case is ordered submitted without oral argument.

Plaintiff Waylon Eugene May appeals the district court's order adopting the magistrate judge's report and recommendation, granting defendants' motions to dismiss and for summary judgment on his 42 U.S.C. § 1983 complaint. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**Background**

On Saturday, May 11, 1996, May, an inmate at the Bill Johnson Correctional Center (BJCC), injured his knee in a softball game. The injury was evaluated by a nurse from the BJCC medical staff, who treated the knee and instructed May to return on Monday for reassessment. Defendant Montalvo saw May on the following Monday, and after noting that he was probably suffering from a meniscal tear, treated the knee and recommended that he be seen at the orthopedic clinic as soon as possible.

On May 24, May was examined at Griffin Memorial Hospital, where the examining physician diagnosed a Grade II medial collateral sprain and recommended that May be placed in a hinged knee brace and undergo six weeks of range of motion stretching exercises. The BJCC refused to issue May a hinged knee brace because it contained metal parts, but instead issued May a neoprene

knee brace. On follow-up, medical staff notes indicate that May's knee was healing well, and he was reminded to do his exercises.

On September 13, 1996, May was seen a second time at Griffin Memorial Hospital. Following this examination, the physician again prescribed a hinged knee brace and exercises, but released May to return to work with certain weight lifting restrictions. The physician did indicate that orthoscopy might be indicated in the future. May filed several requests for a hinged knee brace rather than the neoprene knee brace, but his requests were denied for security reasons.

In January 1997, he again presented at the BJCC medical center with knee pain. He stated that he twisted the knee while jogging two weeks earlier. He was prescribed Naprosyn, but refused to take it. He filed a request that his knee be surgically repaired, but was advised that a request for surgical repair would have to come from Griffin Memorial Hospital. Although May was offered physical therapy three times a week during late 1996 and early 1997, he missed a number of appointments. His final appointment at Griffin Memorial Hospital on April 25, 1997, revealed no abnormalities in the knee.

May brought this action against defendant Oklahoma Department of Corrections and a number of other defendants seeking money damages for violations of his constitutional rights. In his complaint, May alleged that the BJCC's refusal to issue him a hinged knee brace constituted deliberate

indifference to his serious medical needs.  He also asserted an equal protection claim based on his allegation that another inmate had the use of a hinged brace. May averred that he had not received adequate medical care and physical therapy following his knee injury.

Following consideration of defendants' motions and May's responses, the magistrate judge issued findings and recommended that May's complaint against defendants Waken, Griffin Memorial Hospital, and the John and Jane Does be dismissed for defective service.  She further recommended that the summary judgment motion of defendants Montalvo, Cotner, and Rader be granted. Following de novo review of May's objections, the district court adopted the report and recommendation of the magistrate judge in its entirety.

On appeal, Mr. May raises issues asserting (1) that the district court erred in dismissing without prejudice his complaint as to certain defendants for failure to effect timely service of process, and (2) that the district court erred in granting summary judgment to the remaining defendants on Mr. May's claims of deliberate indifference to his serious medical needs.

## Discussion

### A.  Defective Service

Dismissal of a complaint for failure to effect timely service will be set aside only for an abuse of discretion.  *See Espinoza v. United States*, 52 F.3d 838,

840 (10th Cir. 1995). Fed. R. Civ. P. 4(m) provides for dismissal of an action as to a defendant who has not been served within 120 days after the filing of the complaint. Here, May filed his complaint on May 6, 1998. On September 9, 1998, the magistrate judge issued an order advising May that his 120-day time limit for effecting service had expired, but granting him a permissive extension until September 24, 1998, to effect service or show good cause as to why service had not been effected. The order informed May that failure to do either would subject his complaint to dismissal. May filed returns on defendants Montalvo, Rader, and Cotner, but did not accomplish service on the other defendants. May offered the district court no explanation for his failure to serve Griffin Memorial Hospital and the John and Jane Does. Therefore the magistrate judge correctly recommended that all claims against these defendants be dismissed.

In his response to defendant Waken's motion to dismiss for defective service, May asserted that, because the district court made him pay a full filing fee, he had no funds to pay a process server, and therefore left Waken's complaint with a mail room employee. [1] Pursuant to Rule 4(m), a district court should take a two-step approach to extensions of time for service. The court should first inquire whether the plaintiff has established good cause for failing to effect

---

[1]    In an affidavit attached to her special appearance and motion to dismiss, Waken asserted that she had not been at BJCC for several months due to an injury, and therefore did not receive notice of May's lawsuit until January 1999.

timely service. If the plaintiff has established good cause, the court must extend the time for service. *See Espinoza*, 52 F.3d at 841. "If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted." [2] *Id*.

In considering whether May had shown good cause for his failure to serve Waken, the magistrate judge considered whether, if the court granted May an extension of time to effect service, the statute of limitations would bar refiled claims against Waken. The magistrate judge found that, even though it appeared that some of the claims against Waken would be barred if the complaint were refiled, that alone did not constitute good cause. Although a statute of limitations problem counsels against dismissal, *see* Fed. R. Civ. P. 4(m) advisory committee's note ("Relief may be justified . . . if the applicable statute of limitations would bar the refiled action."), this factor alone is not determinative of a finding of good cause, *see, e.g., Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994). Here, Waken did not retrieve the complaint

_____

[2]    In December 1993, amendments to Rule 4 went into effect that "substantially changed the scope of discretion to be exercised by the district courts under [Rule 4]." *Espinoza*, 52 F.3d at 840. Before the 1993 amendment, Rule 4(j) permitted the district court to extend the time for service of the summons and complaint only upon a showing of good cause. In the absence of such a showing, the district court had to dismiss the case. The 1993 amendments broadened the district court's discretion. Rule 4(j) was recodified as Rule 4(m), and amended to permit the district court to extend the time for service even if the plaintiff cannot establish good cause for the failure to effect timely service. *See Espinoza*, 52 F.3d at 840-41.

from her BJCC mailbox until 213 days after May filed his amended complaint.

Even if placing the complaint in Waken's mailbox constituted good service, it

was too late. *See id.* (holding that "where service was never accomplished, in

contrast to having been merely defective in form, the court did not abuse its

discretion in refusing to allow plaintiffs a second chance to effect service").

We note that it was May's responsibility to monitor the progress of service and to

take reasonable steps to assure that Waken was timely served. *See Cox v. Sandia*

*Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991).

The magistrate judge concluded that May failed to show good cause

sufficient to warrant another extension of time under Rule 4(m). We agree.

"'[G]ood cause' determinations entail discretionary conclusions by the district

court and will not be disturbed absent an abuse of discretion." *Hendry v.*

*Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (quotation omitted). "The trial

court abuses its discretion in determining whether there is 'good cause' if its

decision is arbitrary, capricious, or whimsical." *Id.* Here, we conclude that the

magistrate judge's decision to recommend dismissal on May's claims against

Waken for failure to effect timely service was neither arbitrary, capricious, or

whimsical.

While we must construe May's pro se pleadings liberally, *see Riddle v.*

*Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996), his pro se status does not

excuse him from the obligation "to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citing several cases for principle that pro se parties must comply with same procedural rules that govern all other litigants). Therefore, the district court's dismissal of the action against Waken for untimely service of process was not an abuse of discretion.

## B. Summary Judgment

Next, May asserts that the district court erred in granting the motion of Cotner, Rader, and Montalvo for summary judgment on May's Eighth Amendment claims. We review the grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R. Civ. P. 56(c). *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir.), *cert. denied* 120 S. Ct. 53 (1999). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

Because "[a] verified pleading may itself be treated as an affidavit if the facts asserted are within the pleader's personal knowledge," *Jaxon v. Circle K*

*Corp*., 773 F.2d 1138, 1139 n. 1 (10th Cir. 1985), we treat the factual allegations in May's amended complaint as true and construe them in the light most favorable to him. Nonetheless, if May failed to establish the existence of an element essential to his case on which he bore the burden of proof at trial, we will determine that there was no genuine dispute over material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"[D]eliberate indifference to serious medical needs of prisoners" constitutes a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "However, 'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) (quoting *Estelle*, 429 U.S. at 106). In addition, neither medical malpractice nor disagreement with medical judgment constitutes an Eighth Amendment violation. *See id.* The standard for determining whether the government has shown deliberate indifference to the medical needs of a prisoner has two components: "'an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991)).

May alleges that he was not adequately treated for his knee injury, that he was not adequately supervised during physical therapy, that he had to request a recheck, and that he was not issued the hinged brace recommended by the physician at Griffin Memorial Hospital. He contends that when he attended his physical therapy sessions, the staff "just gave [him] some photocopies and a rubber strap" and "[t]old [him] to read it and do the exercises." Appellant's Br. at 17.

Even assuming that all of May's contentions are true, his allegations reflect nothing more than his general disagreement with the course of his medical treatment. This, at most, involves a claim of medical malpractice or negligence that is not actionable under the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *see, e.g., Tyler v. Sullivan*, No. 95-1232, 1996 WL 195295, **2 (10th Cir. April 22, 1996) (following *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) to hold "[a] difference of opinion as to the *kind and timing* of medical treatment does not rise to the level of an Eighth Amendment violation") (emphasis added) (unpublished); *cf. White v. Colorado*, 82 F.3d 364, 367 (10th Cir. 1996) (affirming summary judgment because "plaintiff's allegations of denial of, or delay in providing, diagnostic evaluation and other means of treatment . . . implicate only defendants' negligence and do not establish the more culpable state of mind necessary to support claims of the denial of a constitutional right").

Further, plaintiff's vague and conclusory allegations do not indicate how the alleged deprivation or delay "exacerbate[d] [his] medical problems" or "result[ed] in a lifelong handicap or a permanent loss." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

Finally, we agree with the magistrate judge that May failed to assert a redressable equal protection claim in alleging that another inmate was allowed to have a hinged brace. May is not a member of a suspect class nor did he assert the deprivation of a fundamental right. *See Vacco v. Quill*, 521 U.S. 793, 799 (1997) (holding that unless a distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end); *accord Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

It is clear that the BJCC's denial of May's request for a hinged brace served a legitimate governmental purpose, that of preventing the kind of security problems created by having metal objects available to inmates. The BJCC asserted that the other inmate arrived at the facility with the hinged brace. Be that as it may, the BJCC has the right to make a discretionary decision to issue a hinged brace to one inmate while denying the same to another. *See White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998) (upholding a classification if it is rationally related to a legitimate government interest), *cert. denied*, 526 U.S. 1008

-11-

(1999). Consequently, the BJCC's refusal to issue a hinged brace to May did not violate his right to equal protection of the law.

## Conclusion

We have carefully reviewed the parties' briefs and the record on appeal. We are unpersuaded by May's assertions of error. His claims against unserved defendants were properly dismissed and his disagreement with the timing and manner of his treatment was insufficient to support a constitutional claim. Therefore, the district court properly granted defendants' motions to dismiss and for summary judgment. [3] The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED. Plaintiff is reminded that he is

---

[3] We note that the magistrate judge alternatively recommended dismissal of the claims against defendant Cotner for lack of personal participation. *See* Report & Recommendation at 14 n.6 ( *citing Olson,* 9 F.3d at 1477) (holding that a claim of personal participation of a defendant is essential in a § 1983 civil rights action)). May does not challenge this finding on appeal.

obligated to continue making partial payments of the filing fee until the entire fee has been paid.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge