802 P.2d 641

**Deral Dean SHULL, Plaintiff–Appellant,**

v.

**NEW MEXICO POTASH CORPORA-
TION, a New Mexico corporation,
Defendant–Appellee.**

No. 19142.

Supreme Court of New Mexico.

Dec. 4, 1990.

Paine, Blenden & Diamond, Phil Blenden, Carlsbad, for plaintiff-appellant.

McCormick, Forbes, Caraway & Tabor, Michael E. Dargel, Carlsbad, for defendant-appellee.

OPINION

SOSA, Chief Justice.

Shull appeals summary judgment granted to New Mexico Potash Corporation (Potash). Shull had sued Potash for wrongful termination of employment, alleging that Potash had breached an implied contract of employment set forth in an employee handbook published and given to employees by Shull's original employer, Kerr–McGee Corporation. Shull had gone to work for Kerr–McGee in 1968, worked for Kerr–McGee until the latter sold its operation to Potash in 1985, and then continued to work for Potash until Potash laid him off in May,

1987. Shull was placed on indefinite layoff because of a general reduction in work force at Potash's mine.

There were other employees in the department in which Shull worked who had worked for Potash for a shorter period of time than Shull had. Shull contended that because he had seniority, he should not have been laid off. Potash, however, contends that it laid Shull off because he was not as qualified as the other employees in his department, and that by the policy set forth in the Kerr–McGee handbook, it was justified in laying off Shull rather than another employee. Shull contends that he was as qualified or more qualified than the employees who were retained.

When Potash took over Kerr–McGee, it hired 216 of the 383 Kerr–McGee workers then operating the mine. In his deposition testimony, Shull stated that he knew the employment situation in the mining industry in his locale was uncertain and that if he took a position with Potash it would be for less wages and benefits than had been provided by Kerr–McGee.

There is no dispute that Potash adopted Kerr–McGee's employee handbook and is bound by its terms. The handbook provides, in pertinent part:

When * * * making layoffs * * * the company considers qualifications and seniority. Qualifications means the ability of an employee to perform the duties of the classification to the satisfaction of the management of the company.

\* \* \* \* \* \*

Layoffs shall be made in each department on the basis of qualifications. If, in the judgment of the company, two or more employees have equal qualifications, company seniority shall prevail; that is, the employee with the least company seniority shall be the first laid off, provided there is an immediately qualified replacement available.

\* \* \* \* \* \*

In order to be eligible for recall, you must notify the company in writing, within 10 calendar days of the date of the layoff, of your desire to be recalled

* * *. Qualifications and company seniority are determining factors in recall. It is undisputed that Shull, after being laid off, did not notify the company in writing of his desire to be recalled.

Shull argues on appeal that the court erred in granting summary judgment because the handbook establishes a subjective standard by which the company may make a decision whether to lay off an employee, while by contrast, the law of this jurisdiction requires that the company must use an objective standard. For reasons developed more fully below, we disagree with Shull—both on the facts and on the law. As for the facts, we do not find that Potash used a subjective standard in laying Shull off, but an objective one based on the terms of the handbook—namely, whether there was an objectively verifiable basis for the company's judgment that Shull's qualifications were not equal to those of his co-employees.

Whether the words *on the basis of qualifications* in the handbook is or is not "subjective," the employer properly laid Shull off by the terms of the handbook and in doing so applied rational, objective criteria. In other words, however one might characterize the mental process underlying the employer's decision—objectively versus subjectively motivated—the employer *acted* objectively. Where mental state is not in issue, a court of law need judge only by behavior, not by imperceptible mental processes.

The trial court based its ruling on the same rationale. It found that Potash laid Shull off because in Potash's judgment he was the least qualified employee in a department in which the work force had to be reduced by one employee. Further, Potash was concerned about Shull's alcohol problem and the effect this problem might have on his job performance. Potash had recommended alcohol treatment for Shull, but he did not enter a treatment program until after he had been laid off. In Shull's judgment and in that of a testifying co-worker, Shull was better qualified to continue working than the employees whom Potash retained. But as the handbook specifies,

the judgment as to qualifications is to be made by the employer, not by the employee.

Shull relies on *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 766 P.2d 280 (1988), but that case is of no help to him. The issue in *Kestenbaum* involved termination of a male employee for alleged sexual improprieties with female employees, mismanagement and illegal conduct. At issue were jury instructions pertaining, inter alia, to whether the employer had given the discharged employee an opportunity to defend himself before discharging him and whether the employer had a good reason for terminating the employee. The jury found on these issues for the employee. Shull points for support to the following statement in our opinion:

> The trial court correctly denied Pennzoil's requested Instruction No. 15 because it erroneously suggested the jury could find good cause from the employer's *subjective good faith belief* as opposed to an *objective standard of reasonable belief* [that Pennzoil had sufficient cause to terminate the employee].

*Id.* at 28, 766 P.2d at 288 (emphasis added).

We note first that the facts underlying *Kestenbaum* were different. There the employee presented evidence that he had been assured his "employment would be long term and permanent as long as [he] did his job." *Id.* at 25, 766 P.2d at 285. Here, on the other hand, Shull had been given no assurances that his employment was for any length of time—whether long or short term. He knew that the situation in the mining industry and in the company for which he worked was unstable and insecure.

Whereas the employee in *Kestenbaum* "would not have considered the job if offered only on a short-term basis," *id.*, here there is nothing in the record to suggest that Shull bargained in any way with Potash for any term of employment before continuing his old Kerr–McGee job at reduced wages and benefits. Thus, while the employee in *Kestenbaum* was entitled to bargained-for expectations, Shull was entitled to no expectations. In his deposition, Shull admitted that no one told him he was being hired for a specific period of time and that he knew he could lose his job "the next day." In short, Shull was an at-will employee.

■ Statements in the Kerr–McGee handbook providing for layoffs based on qualifications and seniority do nothing to alter Shull's at-will status. These statements merely emphasize that it is the employer and not the employee who makes the judgment as to qualifications if a decision about layoffs is based on an employee's qualifications. In other words, Shull was an at-will employee who could have been laid off at any time, for any objective reason that did not deprive Shull of a statutory, constitutional, or common-law right—for his alcohol problem, for example.

Surely no one would argue that an employer could not lay off an employee for reasons of alcoholism simply because the alcoholic employee was otherwise more qualified to work than an employee who did not have an alcohol problem. The handbook provisions merely mean that if the company wanted to lay off one or more of its employees, its judgment as to a particular employee's lack of qualifications, and not the employee's, controlled that decision. *Cf. Paca v. K–Mart Corp.*, 108 N.M. 479, 775 P.2d 245 (1989) (at-will salaried employee not covered by terms of employee handbook because it applied only to wage earners).

■ This leads to the second point raised by Shull's reliance on *Kestenbaum*. The jury instruction at issue in *Kestenbaum* (Instruction No. 15, 108 N.M. at 28, 766 P.2d at 288) was fallacious because it suggested that the employer could terminate an employee so long as the employer in good faith, rather than by an objective standard of reasonableness, believed it had cause to terminate the employee. Here, Potash was not bound to the same objectively reasonable standards as was the employer in *Kestenbaum*, because in *Kestenbaum* the employee possessed bargained-for expectations, while in the case before us, Shull was an at-will employee. Thus, Po-

tash could have laid Shull off for any objectively reasonable reason that did not violate Shull's statutory, constitutional or common-law rights.

There was no genuine issue of material fact before the trial court to the effect that Potash violated this objective standard. Shull was in fact laid off only for objectively reasonable reasons. Hence the trial court did not err in granting summary judgment for Potash, and we affirm its judgment.

BACA and MONTGOMERY, JJ., concur.