**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SEREE SULLIVAN,

        Plaintiff-Appellant,

v.

AMERICA ONLINE, INC.,

        Defendant-Appellee.

No. 06-2129
(D.C. No. CIV-04-864)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **MUPRHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

Seree Sullivan appeals the district court's dismissal of her retaliatory discharge, defamation, intentional infliction of emotional distress, prima facie tort, and punitive damages claims, and the court's grant of summary judgment to the defendant on her breach of contract claims. We affirm.

Ms. Sullivan began her employment with AOL in December of 1999 as a Member Retention Consultant. On December 1, she signed an employment application containing the following language:

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

> I understand that employment at AOL is on an at will basis, and that my employment may be terminated with or without cause, and without notice, at any time, at my option, or that of AOL. I further understand that no AOL employee or representative has the authority to enter into a contract regarding duration or terms and conditions of employment other than an officer or official of AOL, and then only by means of signed written document.

Aplt. App. at 174. The offer letter given to her by AOL and signed by her on December 10 stated that her "employment at America Online is at will and [she] or the company is free to terminate the employment at any time with or without cause." *Id*. at 175. On the same day, she signed a "Business and Personal Conduct" form outlining certain actions, including "[d]isrespectful or discourteous conduct . . . to other personnel," that present "grounds for immediate disciplinary action up to and including termination of employment." *Id*. at 176.

In October 2001, AOL promoted Ms. Sullivan to a supervisor or "coach" position. Between February and May of 2002, several employees complained that Ms. Sullivan made derogatory comments about consultants and coaches, dressed in sexually suggestive clothing at work, made sexually explicit and vulgar comments, rubbed her breasts against a male consultant, and revealed an abdominal scar after unfastening her clothing. Craig Alter, a Human Resources Generalist at AOL, investigated these allegations and confirmed several of the complaints in his conversations with consultants and coaches. The responses were not unanimous, however, and several employees did not corroborate the allegations. At some point, Ms. Sullivan informed her supervisor she felt she was

being harassed at work. On May 28, 2002, AOL terminated Ms. Sullivan's employment.

In this action, Ms. Sullivan asserted claims of retaliatory discharge, defamation, intentional infliction of emotional distress, prima facie tort, punitive damages, and breach of implied and express contracts. The district court dismissed all but the breach of contract claims for failure to state a claim. The court subsequently granted AOL's motion for summary judgment on the contract claims. Ms. Sullivan appeals the dismissal and the grant of summary judgment.

Ms. Sullivan contends on appeal that whether an implied contract was formed presents a genuine issue of material fact precluding the court's grant of summary judgment. "We review the grant of summary judgment *de novo*, examining the record and the reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Templeton v. Neodata Servs. Inc.,* 162 F.3d 617, 618 (10th Cir. 1998). Summary judgment is appropriate only when the evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1079 (10th Cir 1999).

Ms. Sullivan maintains that several actions by her employer led her to believe an implied contract was created. Specifically, she contends statements made by her supervisors and AOL's prior commitment to progressive discipline established, at minimum, that the existence of an implied contract was an

unsettled factual question. Under New Mexico law, whether an implied contract was created is generally a question of fact. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 780 (N.M. 1993). Thus, only if the evidence is insufficient to create a "genuine issue" of "material fact" regarding whether an implied contract was established is summary judgment appropriate. FED. R. CIV. P. 56(c). *See Shull v. New Mexico Potash Corp.*, 802 P.2d 641 (N.M. 1990) (affirming summary judgment in favor of employer that there was no implied contract).

In New Mexico, employment is terminable at will absent an express contract to the contrary. *See Lopez v. Kline*, 953 P.2d 304, 306 (N.M. 1998). However, an implied contract will override the presumption of at-will employment. *See Hartbarger*, 857 P.2d at 780. "An implied contract is created only where an employer creates a reasonable expectation" of continued employment. *Id.* at 783. "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Id.* "[I]t is not any single act, phrase or expression, but the totality of all of these, given the circumstances and the parties' situation and objectives, which will control." *Kestenbaum v. Pennzoil Co.*, 766 P.2d 280, 286 (N.M. 1988).

An employer creates an implied contact where the employer's action "was intended, or reasonably could be interpreted by [the employee] to be confirmation of an implied contract or a modification of the employment relationship." *Hartbarger*, 857 P.2d at 785. In this case, AOL provided Ms.

-4-

Sullivan with at least four separate documents, three of which were signed by Ms. Sullivan, *expressly* affirming her at-will employment status. First, Ms. Sullivan signed an "Application Form" attesting to her understanding that she would be hired on an "at will basis" and that the conditions of her employment were modifiable "only by means of signed written document." Aplt. App. at 174. Second, in her signed offer letter, Ms. Sullivan acknowledged her "employment at America Online is at will and [she] or the company is free to terminate the employment at any time with or without cause." *Id.* at 175. Third, she signed a form entitled "Business and Personal Conduct" apprising her that "[d]isrespectful or discourteous conduct to . . . other personnel," among other actions, "will be considered grounds for immediate disciplinary action *up to and including immediate termination of employment*." *Id.* at 176 (emphasis added). And, last, the AOL Employment Handbook stated "both the employee and AOL have the right to terminate employment at will, with or without cause, at any time." *Id.* at 177. In light of these repeated unequivocal written declarations of Ms. Sullivan's at-will status, one of which explicitly precluded oral modifications, we conclude Ms. Sullivan could not have reasonably expected her supervisors' statements regarding progressive discipline modified her employment terms as a coach.[1] *See*

---

[1]Ms. Sullivan asserts that she "thought at all times the Defendant's company policy was committed to progressive discipline," and that she expected this stepwise disciplinary procedure would be applied prior to her termination. Aplt. Br. at 22. She asserts supervisors told her the "only two ways you can get fired from AOL [are] to have an attendance issue or just be plain stupid," and that "you're not fired just

*Hartbarger*, 857 P.2d at 787 (reversing jury finding of an implied contract because totality of evidence was insufficient to support that conclusion).

Ms. Sullivan also argues "she had an implied contract" that was violated because AOL's "policy of harassment was not followed" after she reported to her supervisor that she was the subject of harassment and the company failed to investigate. Aplt. Br. at 24. However, the AOL Employee Handbook containing the company's harassment policy also contained the following disclaimer: "Since employment with AOL is based on mutual consent, both the employee and AOL have the right to terminate employment at will, with or without cause, at any time." Aplt. App. at 177. Under New Mexico law a policy manual which also expressly states employment is terminable at will does not create an expectation of an implied contract. *See Paca v. K-Mart Corp.*, 775 P.2d 245, 247 (N.M.

---

randomly, you're not ever slammed without cause." Aplt. App. at 169. However, these comments appear to have been addressed to Ms. Sullivan either when she "began working at AOL" *as a consultant*, *id*, or in the context of addressing how she, in her later position as a coach, should discipline consultants. *See id.* at 170 ("when I was a coach . . . it's always been said to me that if – if I had a consultant and I had an issue with them, . . . 'you've got to do everything in you power to try to work this through with them . . .'"). In regards to the termination of coaches, Ms. Audra Sedillo, a Senior Human Resources Manager at AOL, stated in an affidavit that the "steps of progressive discipline are rarely used for higher-level supervisory positions, including coaches," and even when applied to consultants "the use of progressive discipline is" ultimately "discretionary." *Id.* at 146-45. Furthermore, at a deposition, Ms. Sullivan agreed with her questioner that there "could be circumstances" where "AOL could move to immediate termination in their discretion based on the totality of the circumstances." *Id.* at 171. These statements and AOL's non-exclusive use of progressive discipline, in light of the four unambiguous writings, could not have reasonably led Ms. Sullivan to believe that AOL had modified her employment status.

1989) ("[T]he handbook clearly stated that . . . employees were *terminable 'at will.'* Personnel manuals containing such a statement do not create an implied contract altering the parties 'at will' relationship.") (emphasis in original); *Lukoski v. Sandia Indian Mgmt. Co.*, 748 P.2d 507, 509-10 (N.M. 1988) ("Employers are certainly free . . . to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract *and that their jobs are terminable at the will of the employer with or without reason*. Such actions instill no reasonable expectations of jobs security and do not give employees any reason to rely on representations in the manual.") (emphasis added) (citation and quotation omitted). Thus, even assuming AOL failed to follow its written harassment policy, AOL's employee handbook read as a whole undermines any claim that Ms. Sullivan reasonably understood her at-will status was impliedly altered by the harassment policy.

Nor are we persuaded by any of the other issues appealed by Ms. Sullivan. We affirm those for substantially the reasons set forth by the district court in its well-reasoned decision.

The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

-7-