**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

LORENA CHAVEZ-ACOSTA,

      Plaintiff – Appellant,

v.

SOUTHWEST CHEESE COMPANY,
LLC,

      Defendant – Appellee.

No. 13-2227
(D.C. No. 2:12-CV-00353-JAP-CG)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY, BALDOCK,** and **PHILLIPS,** Circuit Judges.[**]
_____

Plaintiff Lorena Chavez-Acosta was an employee of Defendant Southwest Cheese Company, LLC ("SWC") from August 2010 until July 2011, when she resigned. Chavez-Acosta contends that her resignation was compelled by repeated acts of sexual harassment by fellow employees Chance Senkevich and Cody Stewart that made her work environment intolerable. Chavez-Acosta eventually sued SWC in New Mexico state

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

court, asserting claims of: (1) a hostile work environment due to sexual harassment and retaliation in violation of Title VII and of the New Mexico Human Rights Act; (2) a violation of 42 U.S.C. § 1981; (3) breach of contract; (4) negligent hiring and supervision; and (5) intentional infliction of emotional distress. The district court dismissed Chavez-Acosta's § 1981 and retaliation claims. The district court then granted SWC summary judgment on all claims except Chavez-Acosta's hostile work environment claim based on Senkevich's conduct. The latter claim proceeded to trial, eventually resulting in a verdict for SWC.

Chavez-Acosta raises five issues on appeal. First, she appeals the district court's order striking portions of the affidavits she submitted in response to SWC's summary judgment motion. She also appeals the district court's grant of summary judgment on her claims regarding: (1) constructive discharge; (2) a hostile work environment due to Stewart's sexual harassment; (3) SWC's negligent hiring and supervision of Stewart; and (4) breach of contract.[1]

---

[1] Chavez-Acosta's filings are imprecise on exactly what issues she is appealing. Specifically, her two filings before this court are inconsistent on the separation of her constructive discharge and hostile work environment claims. While her initial statement of the issues refers only to an appeal of the district court's grant of summary judgment regarding constructive discharge, the body of the brief itself appears to contest both issues. In her reply brief, however, Chavez-Acosta seeks to combine her hostile work environment and constructive discharge actions into one claim, asserting that she is "advanc[ing] a compound claim, that is a constructive discharge claim premised on a hostile work environment." Chavez-Acosta does this, no doubt, because she failed to amend her filing before the New Mexico Human Rights Bureau to include a claim of constructive discharge. As will be detailed below, her failure to do so deprives this court of jurisdiction to consider her constructive discharge claim. Chavez-Acosta appears to believe that arguing constructive discharge as a compound claim with hostile work environment will somehow save this jurisdictional deficiency. It is not so. Whatever

Exercising jurisdiction under 28 U.S.C. § 1291, we DISMISS Chavez-Acosta's constructive discharge claim for lack of jurisdiction and otherwise AFFIRM as to all issues raised in this appeal.

## I. Factual Background[2]

*A. Workplace Incidents*

Chavez-Acosta began working for SWC on August 12, 2010, as a Level I employee (hourly cheese production employee). SWC's employment handbook, which SWC gave to Chavez-Acosta, states that all employees are at-will. The handbook also states that the only way to alter this status is for a change to be agreed to "in writing and signed by both the employee and the CEO." Even so, Chavez-Acosta contends that it was well understood at SWC that all employees begin employment with a 90-day probationary period, after which employees can only be terminated for good cause.

While she was working at SWC, Chavez-Acosta alleges she was sexually assaulted by fellow employee Cody Stewart.[3] Specifically, Chavez-Acosta asserts that at work one

Chavez-Acosta's assertions regarding a "compound claim," we consider her hostile work environment and constructive discharge claims separately to explain why we lack jurisdiction to entertain her constructive discharge argument here.

[2] As this case is before us on an appeal of the district court's grant of summary judgment, we state the facts in the light most favorable to Chavez-Acosta, the non-moving party. *See, e.g.*, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

[3] As noted above, Chavez-Acosta claims she was also sexually assaulted by fellow employee Chance Senkevich. Because her claims regarding Senkevich proceeded to trial and a jury decided that Chavez-Acosta could not prove that Senkevich had sexually harassed her, the law of the case doctrine prevents Chavez-Acosta from relitigating this

night in October 2010, Stewart repeatedly exposed his genitals to her. Stewart allegedly told Chavez-Acosta that he was doing so because he was having problems with his wife and wanted to get back at her for cheating on him. Chavez-Acosta also asserts that Stewart told her that if she reported him to Human Resources, she would lose her job because he was friends with Production Manager Eric Denton. Chavez-Acosta claims that as a result, she did not report Stewart's actions out of fear for her job.

Chavez-Acosta contends that Stewart had a habit of exposing his genitals in workplace environments—principally to female coworkers—and that his predilection was well known at SWC. Specifically, Chavez-Acosta asserts that Stewart had previously exposed himself to both Margarita Holguin and Yvonne Macias, fellow SWC employees. She also contends that Stewart asked fellow employee Misty English "do you want to see my dick?" while at work. But the record is devoid of evidence suggesting that anyone reported these instances to SWC management.

Chavez-Acosta also points us to two additional incidents demonstrating Stewart's penchant for genital exposure which, while not involving female co-workers, are meant to highlight that SWC should have been aware of his issue. First, in November 2008 Stewart used a coworker's phone to take a picture of his exposed genitals at an SWC going-away party. Although many members of upper management saw this picture, Stewart was not reprimanded. Second, in September 2012—after Chavez-Acosta had left

---

issue before us. *See Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014) ("Under the law of the case doctrine, 'once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case.'" (quoting *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1520 (10th Cir. 1997))). The facts detailed here thus concern only Stewart's conduct.

SWC—Human Resources reprimanded Stewart for sending a picture of uncovered genitals to a male coworker.

*B. Procedural History*

On July 18, 2011, Chavez-Acosta resigned from SWC. Before resigning, she filed a charge of discrimination with the New Mexico Department of Workforce Solutions: Human Rights Bureau ("Human Rights Bureau"). In her filing before the Human Rights Bureau, Chavez-Acosta detailed her alleged harassment based on Senkevich's and Stewart's conduct. She asserted claims for a hostile work environment arising from sexual harassment, retaliation, and a violation of 42 U.S.C. § 1981. But because she had not yet resigned, Chavez-Acosta's filing did not allege constructive discharge. Nor did Chavez-Acosta ever amend this complaint to include a constructive discharge claim.

After reviewing the facts of Chavez-Acosta's complaint, the Human Rights Bureau issued an Order of Non-Determination. Chavez-Acosta appealed this ruling in New Mexico state court. SWC then removed the case to federal district court and moved to dismiss Chavez-Acosta's complaint. In district court, Chavez-Acosta amended her complaint to include claims for breach of contract, intentional infliction of emotional distress, and negligent supervision. The district court granted SWC's motion to dismiss the § 1981 and retaliation claims, but it allowed the remaining claims to proceed. SWC later moved for summary judgment on the remaining claims; the district court granted summary judgment on the claims for breach of contract, intentional infliction of emotional distress, negligent supervision, and a hostile work environment related to

Stewart's conduct. However, the district court denied summary judgment on the claim for a hostile work environment based on Senkevich's conduct.

The claim based on Senkevich's conduct proceeded to trial. The first trial resulted in a hung jury, but a second trial resulted in a jury verdict for SWC. Following the court's entry of judgment on the jury's verdict, Chavez-Acosta timely appealed from the court's grant of summary judgment and from an order striking portions of the affidavits she provided in response to SWC's summary judgment motion.

## II. Discussion

### A. Affidavit Portions

Before we consider Chavez-Acosta's appeal from the district court's grant of summary judgment, we first address her concerns regarding the district court's decision to strike portions of the affidavits she submitted before it considered summary judgment. Chavez-Acosta challenges two of the district court's determinations: (1) the decision to strike from her affidavit the statement that "it was well known [at SWC] that Stewart had a habit of exposing his genitals to female employees," which the district court struck because Chavez-Acosta "provide[d] no detail as to how she knew that 'it was well known' at SWC"; and (2) the decision to strike from Yvonne Macias's affidavit the statement that Stewart was "untouchable because he was part of the white male power structure at SWC and was protected," which the district court similarly struck because there was no indication that Macias had personal knowledge that Stewart was "untouchable." Chavez-Acosta contends that striking the affidavits in this manner was an

-6-

inappropriate evidentiary ruling and that sufficient evidence supported both Macias's and her personal knowledge contained in their statements.

The admissibility of an affidavit submitted on summary judgment is an evidentiary ruling that we review for an abuse of discretion. *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) ("We cannot say that the district court abused its discretion in finding [the] affidavit a sham and excluding it. We therefore affirm its grant of summary judgment on this count."). Regarding the trial court's alleged error in granting the defendant's motion to strike the affidavits, Chavez-Acosta's argument here is premised on the fact that some courts have held that in this context a trial court ordinarily should not strike affidavits, but should instead "simply disregard[] those portions which are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e)." *See, e.g.*, *Sholl v. Plattform Adver., Inc.*, 438 F. Supp. 2d 1303, 1307 (D. Kan. 2006).

We do not believe that the district court abused its discretion in refusing to credit the affidavit statements at issue here. The record shows that neither Chavez-Acosta nor Macias had a basis in personal knowledge for the statements made in their affidavits. *See Garrett*, 305 F.3d at 1213 (recognizing that information presented in the nonmovant's affidavit must be "based on personal knowledge and [must set] forth facts that would be admissible in evidence" (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995))). Chavez-Acosta maintains that she has personal knowledge regarding her assertion; however, her purported personal knowledge is essentially just a conclusory statement reiterating that Stewart had exposed himself to both her and Macias. She argues

-7-

that her personal knowledge of these incidents is sufficient to support her assertion that Stewart's propensity for genital exposure was well known at SWC. We disagree, and we therefore affirm the district court on this issue. Because Chavez-Acosta does not appear to us to provide any reason why the district court's determination regarding Macias's affidavit was incorrect—beyond the conclusory assertion that Macias's statement was "based on personal knowledge and admissible in a summary judgment proceeding"—we also affirm as to this determination.

Concerning the alleged error in granting a motion to strike portions of the affidavits, we do not believe that the trial court's decision here amounted to an abuse of discretion. The trial court was correct to disregard the statements at issue because they were not based on personal knowledge. Even if—as Chavez-Acosta appears to contend—granting a motion to strike was an uncommon vehicle through which to disregard these statements, in substance the trial court's actions affected the same result: the court correctly disregarded the statements at issue when ruling on summary judgment. This alleged "error" in no way prejudiced Chavez-Acosta and does not amount to an abuse of discretion.

In sum, we do not believe the district court abused its discretion by barring the statements contained in the affidavits of Chavez-Acosta and Macias for lack of personal knowledge. We therefore affirm the district court as to its determinations regarding the statements contained in these affidavits.

*B. Constructive Discharge*

Concerning the district court's summary judgment determinations, we first consider Chavez-Acosta's appeal regarding her constructive discharge claim. Before we can reach the merits of this claim, however, we must address jurisdiction. Under both Title VII and the New Mexico Human Rights Act, exhaustion of administrative remedies is a jurisdictional prerequisite to suit. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (Title VII); *Luboyeski v. Hill*, 872 P.2d 353, 355–56 (N.M. 1994) (Human Rights Act). A plaintiff must timely file an administrative charge to preserve any claim based on a discrete discriminatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Chavez-Acosta neither filed a claim of constructive discharge with the Human Rights Bureau nor amended her initial complaint with the Human Rights Bureau to include a claim of constructive discharge. Nonetheless, she asserts that this failure does not strip us of jurisdiction. Instead, she characterizes her claim as "a constructive discharge claim premised on a hostile work environment." In this refashioning, she bases her claim on a series of discriminatory events and not any "single discrete act." Chavez-Acosta believes this distinction permits us to exercise jurisdiction. In addition, she notes that SWC never raised the jurisdictional arguments below, and thus she contends that it has waived this argument.

We find both of Chavez-Acosta's arguments unavailing. First, as to SWC's failure to raise the argument below, this failure does not bar our consideration of our own jurisdiction. Indeed, the Supreme Court has counseled that "[s]ubject-matter jurisdiction

can never be waived or forfeited." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). And second, Chavez-Acosta's reformulation of her argument does nothing to rescue her failure either to lodge a complaint with the Human Rights Bureau alleging constructive discharge or to amend her initial complaint before the Human Rights Bureau to include a claim of constructive discharge. We have previously concluded, in circumstances similar to those presented here, that "a claim of constructive discharge requires filing an administrative charge." *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009) (unpublished). Chavez-Acosta's failure to file such a charge or to amend her previously filed complaint to include a constructive discharge claim renders us unable to reach the merits of her constructive discharge argument. We therefore dismiss her constructive discharge claim for a lack of jurisdiction.

## C. Hostile Work Environment[4]

Chavez-Acosta next contests the district court's grant of summary judgment regarding her claims of a hostile work environment based on Stewart's conduct. We review the district court's grant of summary judgment de novo. *Manard v. Fort Howard Co.*, 47 F.3d 1067, 1067 (10th Cir. 1995). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). In order

---

[4] The same legal and evidentiary standards undergird both Title VII and the New Mexico Human Rights Act. *See Rodriguez v. N.M. Dept. of Workforce Solutions*, 278 P.3d 1047, 1050 (N.M. Ct. App. 2012) ("Owing to the similarities between the Human Rights Act and Title VII, our Supreme Court has noted that our analysis of claims under the Human Rights Act is guided by the federal courts' interpretation of unlawful discrimination under Title VII." (citing *Garcia-Montoya v. State Treasurer's Office*, 16 P.3d 1084 (N.M. 2001))). Therefore, we will consider these claims together.

to prevail on a hostile work environment claim, Chavez-Acosta must demonstrate that she was discriminated against because of her gender and that this discrimination created an abusive environment that was severe enough to alter the conditions of her employment. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012). To determine whether the harassment was sufficiently severe, we consider "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). SWC could be liable for Stewart's sexual harassment under two theories: (1) vicarious liability; or (2) negligence. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (vicarious liability); *Hirschfeld v. N.M. Corr. Dep't*, 916 F.2d 572, 577 (10th Cir. 1990) (negligence). Generally, the vicarious liability theory applies only when the harasser is a supervisor, while the negligence theory applies when the harasser is a co-worker. *See Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 755 (10th Cir. 2014). As Chavez-Acosta asserts that SWC could be liable under either theory, we consider both in turn.[5]

---

[5] Chavez-Acosta actually contends that there are three theories of liability under which SWC could be responsible for Stewart's actions: (1) negligence; (2) actual authority; and (3) apparent authority. As both actual authority and apparent authority are mere creatures of vicarious liability, we consider them more appropriately here under the same theory.

### i.    *Vicarious Liability*

Regarding vicarious liability, the Supreme Court has previously held that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc.*, 524 U.S. at 764–65. Recently, the Court revised the definition of a supervisor for the purposes of Title VII, holding that:

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (quoting *Burlington Indus., Inc.*, 524 U.S. at 761). Because Chavez-Acosta's case was still open on direct review when *Vance* was decided, we must give *Vance* full retroactive effect. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (holding that, when the Supreme Court applies a rule of law to the case before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule"). We believe that a New Mexico court would treat *Vance* the same way when considering Chavez-Acosta's claim under the New Mexico Human Rights Act. *See Rodriguez*, 278 P.3d at 1050 ("[O]ur Supreme Court has noted that our analysis of claims under the Human Rights Act is guided by the federal courts' interpretation of unlawful discrimination under Title VII.").

-12-

SWC contends that Stewart was not a supervisor under *Vance*. At the time of his alleged conduct, Stewart was an Assistant Team Leader in the Cheese Department. SWC asserts that this did not give him the authority to cause any "significant change" in Chavez-Acosta's employment. Based on *Vance*, therefore, SWC argues that Stewart was not a supervisor and so it cannot be held liable for his alleged conduct under a vicarious liability theory.

Chavez-Acosta denies this assertion. She contends *Vance* does not rescue SWC because material issues of fact remain in dispute regarding Stewart's supervisory status. Further, she asserts that the district court found that Stewart was a supervisor, and that SWC waived argument on this point by failing to contest Chavez-Acosta's additional material issues of fact.

Chavez-Acosta is correct that, based on the pre-*Vance* definition of a supervisor for Title VII purposes, the district court found that Stewart qualified as a supervisor. It also appears from the record that SWC did not contest this characterization. But, contrary to Chavez-Acosta's assertions, there are two reasons why we can consider this argument. First, it would seem unfair to require SWC to formulate arguments by divining the outcome of future Supreme Court decisions. And second, we have repeatedly iterated that "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *E.g.*, *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011).

With those preliminary considerations disposed of, we hold that Stewart was not a supervisor under *Vance*. While the district court found that Stewart was a part of the

-13-

"supervisory hierarchy at SWC," this is not enough. At the time of the contested incidents, Stewart was an Assistant Team Leader in the Cheese Department. His duties did not give him the authority to take any "tangible employment actions" against Chavez-Acosta. Instead, that authority resided with SWC's Production Managers and Human Resources Director. Whatever Chavez-Acosta's assertions about Stewart's "de facto supervisory status," *Vance* tells us that his position did not amount to that of a "supervisor" for Title VII purposes. Given Stewart's status, SWC cannot be held vicariously liable for his alleged harassment of Chavez-Acosta.

### ii. Negligence

To prevail on a negligence theory, Chavez-Acosta must demonstrate that SWC "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998) (quoting *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 (10th Cir. 1997), *vacated*, 524 U.S. 947 (1998)). Actual knowledge can be demonstrated "in most cases where the plaintiff has reported harassment to management-level employees." *Id.* If a management-level employee was not notified, Chavez-Acosta could demonstrate constructive knowledge by showing that Stewart was a "'dangerous employee' whose tendencies [SWC] should have known about" based on his conduct towards others. *Kramer*, 743 F.3d at 755. To determine whether to consider acts alleged by other employees as relevant to SWC's constructive knowledge of Stewart's harassment of Chavez-Acosta, "we look to '[t]he extent and seriousness of the earlier harassment and

the similarity and nearness in time to the later harassment . . . .'" *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1147 (10th Cir. 2008) (alterations in original) (quoting *Hirase-Doi v. U.S. W. Commc'ns, Inc.*, 61 F.3d 777, 783–84 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc.*, 524 U.S. 742, *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Chavez-Acosta stresses that she has presented enough evidence to make SWC's knowledge a disputed issue of material fact. She asserts SWC knew or should have known about Stewart's conduct for three reasons, the first going to actual knowledge and the second two to constructive knowledge. First, Chavez-Acosta appears to contend that Stewart's knowledge of his own conduct should be imputed to SWC since he was a management-level employee. Second, Chavez-Acosta highlights that management-level employees knew that Stewart had taken a cell-phone picture of his genitals at a company party in 2008 and that many management-level employees at the party had even seen the picture. And finally, Chavez-Acosta claims that at least one other employee complained to management about Stewart's conduct. She believes that, when combined, these incidents sufficiently show that SWC either knew, or should have known, about Stewart's conduct.

SWC rebuts these assertions. It contends that Stewart's knowledge of his own conduct, as an Assistant Team Leader, cannot possibly be enough to impute actual knowledge to SWC. Regarding actual knowledge, it also highlights that, prior to her filing with the Human Rights Bureau, Chavez-Acosta never reported Stewart's conduct. Concerning constructive knowledge, SWC asserts that Stewart's actions at a party nearly

-15-

two years before his alleged harassment of Chavez-Acosta are insufficient to show that SWC had constructive knowledge of his harassment of Chavez-Acosta. SWC also contends that—contrary to Chavez-Acosta's assertion—there was no evidence on the record that any other employee had complained about Stewart engaging in similar conduct.

SWC is correct on all counts. First, concerning SWC's actual knowledge, Chavez-Acosta has never indicated that she reported Stewart's conduct to the appropriate authorities. And to the extent Stewart was a supervisor rather than Chavez-Acosta's co-worker, SWC would be liable under the vicarious liability theory discussed above and not the negligence theory at issue here. *See Kramer*, 743 F.3d at 755. Chavez-Acosta has created no dispute of fact regarding whether SWC had actual knowledge of Stewart's conduct.

Chavez-Acosta has also failed to create a dispute of fact regarding SWC's constructive knowledge. Despite her assertion that Stewart repeatedly exposed himself to a host of people, we see no evidence in the record that any of these incidents (other than the incident at the 2008 party) were ever reported to management or taken to the appropriate authorities. SWC's constructive knowledge, then, must be imputed from Stewart's actions at the 2008 party. While Stewart's conduct was undoubtedly inappropriate, Chavez-Acosta asks us to infer SWC's constructive knowledge regarding her discrimination based on one dissimilar incident two years before. We cannot say this incident alone would suffice to give SWC constructive knowledge of Stewart's later harassment of Chavez-Acosta.

We therefore conclude that Chavez-Acosta has not shown that SWC could be liable for Stewart's conduct under either a vicarious liability theory or a negligence theory.

## D. *Negligent Hiring and Supervision*

Chavez-Acosta offers negligent supervision as another theory under which SWC could be liable for Stewart's conduct. Under New Mexico law, this claim would require "evidence that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known the employee was unfit." *Valdez v. Warner*, 742 P.2d 517, 519 (N.M. Ct. App. 1987) (internal citation omitted). To survive summary judgment on a negligent hiring, retention, or supervision claim in New Mexico, an employee need only prove that the employer knew or reasonably should have known that an employee might cause some harm. *EEOC v. Univ. of Phoenix, Inc.*, 505 F. Supp. 2d 1045, 1063 (D.N.M. 2007).

The considerations that enter into this claim, then, are the same as those discussed above regarding SWC's actual or constructive knowledge of Stewart's harassment. And the evidence, or lack thereof, is the same. Chavez-Acosta contends SWC was negligent for retaining Stewart, but the only evidence she offers to buttress this claim is SWC's knowledge of Stewart's actions at the party in 2008. Just as it was insufficient to support her hostile work environment claim, so too is this evidence not enough to overcome summary judgment on the issue of negligent hiring.

*E. Breach of Contract*[6]

Chavez-Acosta's final claim is that her constructive discharge from SWC constituted a breach of contract. Despite the language in SWC's employee handbook regarding the at-will nature of the employment, Chavez-Acosta claims there was an implied contract that, after 90 days, an employee at SWC would be fired for good cause only. She highlights that the existence of an implied contract is usually a question of fact for a jury, and she believes that she has presented enough evidence that this question should survive summary judgment and reach a jury.

SWC counters in two ways. First, it contends that Chavez-Acosta resigned her position and has failed to create a fact issue on her constructive discharge claim. Second, SWC argues that Chavez-Acosta was an at-will employee and thus—even if she was constructively discharged—such discharge could not constitute a breach of contract.

We believe that SWC could succeed under either theory. We need not concern ourselves with its argument regarding the factual basis underlying Chavez-Acosta's constructive discharge argument, however, because this is ultimately irrelevant to our determination. Even if we were to find that Chavez-Acosta could overcome summary judgment on this issue, the fact remains that her employment contract, the SWC

---

[6] It may at first seem incongruous that we lack jurisdiction to consider Chavez-Acosta's constructive discharge claim, and yet we can consider her arguments regarding a breach of contract when the "breach" is the same alleged constructive discharge. It appears, however, that New Mexico would permit this line of argument to proceed in a breach of contract claim under similar circumstances. *See Gormley v. Coca-Cola Enters.*, 85 P.3d 252, 256 (N.M. Ct. App. 2003) (entertaining a claim for breach of contract based on constructive discharge where the plaintiff never filed an administrative complaint). Therefore, we will also consider this argument.

handbook, and every written communication on the record between her and SWC confirms that she was an at-will employee. In fact, SWC's handbook explicitly states that the only way for this status to be altered is through an agreement "in writing and signed by both the employee and the CEO."

Chavez-Acosta does not claim that a written agreement modifying the terms of her employment and conforming to the SWC handbook's requirements exists. Instead, she asserts that SWC's words and actions created an implied contract that she would be dismissed only for good cause. She correctly notes that, under New Mexico law, the existence of an implied contract is a question of fact, and thus summary judgment is appropriate only if the evidence is insufficient to create a genuine issue of material fact regarding whether an implied contract was established. *See, e.g., Sullivan v. Am. Online, Inc.*, 219 F. App'x 720, 721–22 (10th Cir. 2007) (unpublished) (citing Fed. R. Civ. P. 56(c) and *Shull v. N.M. Potash Corp.*, 802 P.2d 641 (N.M. 1990)).

Even assuming that the words and actions of her supervisors informed Chavez-Acosta that her employment status had been modified, this would still be insufficient to overcome summary judgment. In New Mexico, "an implied contract is created only where an employer creates a reasonable expectation" of continued employment. *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 783 (N.M. 1993). We have previously found under New Mexico law that "repeated unequivocal written declarations of [an individual's] at-will status," particularly when these declarations include one that "explicitly preclude[s] oral modifications," are more than enough to make unreasonable a plaintiff's belief that her supervisor's statements and actions modified the at-will nature

-19-

of her contract. *Sullivan*, 219 F. App'x at 722. That is precisely the situation here. Given the repeated written acknowledgments of her at-will status and the company policy prohibiting oral modification of that status, we find unreasonable any belief Chavez-Acosta may have harbored that her status as an at-will employee had morphed into something different.

We therefore affirm the district court's grant of summary judgment as to Chavez-Acosta's breach of contract claims.

### III.    Conclusion

For the reasons stated above, we DISMISS Chavez-Acosta's constructive discharge claim for lack of jurisdiction and AFFIRM the district court as to all other issues raised in this appeal.

ENTERED FOR THE COURT,


Gregory A. Phillips
Circuit Judge