FILED
United States Court of Appeals
Tenth Circuit

February 5, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MARGARITA JUAREZ,

Plaintiff-Appellant,

v.

STATE OF UTAH, Department of
Health – Family Dental Plan,

Defendant-Appellee,

and

ANDREA HIGHT; ERICA VEKTER,

Defendants.

No. 06-4254
(D.C. No. 2:05-CV-53-PGC)
(D. Utah)

---

## ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

Margarita Juarez appeals the district court's grant of summary judgment to

the State of Utah's Department of Health – Family Dental Plan on her claims for

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

retaliation, disparate treatment, sexual harassment, and hostile work environment. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## *Background*

### *General Background Facts*

Utah's Department of Health – Family Dental Plan (Family Dental) provides dental services to Medicaid and state aid recipients. Andrea Hight, the dental program administrator for Family Dental, hired Ms. Juarez as a dental assistant on October 7, 2003. She remained employed by Family Dental during all times relevant to her claims. Her direct supervisor was Mark Palmer and her primary work location was the Family Dental clinic in Salt Lake City.

Family Dental periodically sends dentists and dental assistants to other locations in Utah, where they provide dental services at temporary clinics for short periods. In December 2003, Ms. Juarez accompanied Dr. S., a dentist employed by Family Dental, to provide dental services in Enterprise, Utah. She again accompanied Dr. S. on a week-long work trip to Bicknell, Utah, in January 2004.

The first incident arises from the Bicknell trip. Shortly after that trip, on January 28, 2004, Dr. S. reported to Ms. Hight that Ms. Juarez made advances to him during the return drive. He claimed that Ms. Juarez was in the passenger seat and she threw her arms around him, kissed him, and told him that she loved him and wanted to be with him for eternity. Dr. S. indicated to Ms. Hight that

-2-

Ms. Juarez's conduct made him uncomfortable and that he would prefer not to be alone with her in the future. He said he did not want any serious action taken against her, but that he was concerned that she would retaliate against him. Ms. Hight informed Dr. S. that Human Resources would do an investigation and she asked him to keep his complaint confidential.

Ms. Hight and Mr. Palmer informed Ms. Juarez about Dr. S.'s complaint of sexual harassment the next day. She denied the allegations, but she made no complaint against Dr. S. at that time. The following day, however, Ms. Juarez reported to Mr. Palmer that during the Bicknell trip, she and Dr. S. were at a restaurant when he pulled out a $100 bill, showed it to her, and told her it was hers if she would go back to his room and have sex with him. She told Mr. Palmer this made her very upset and that she got up and walked out of the restaurant. Mr. Palmer immediately reported Ms. Juarez's complaint to Ms. Hight, who reported it to Human Resources for investigation.[1]

In a meeting with Ms. Hight and Shelley Miles from Human Resources on February 18, Ms. Juarez stated that Dr. S. should be fired. She indicated that she

---

[1] Ms. Juarez testified that in the car on the way home from Bicknell, Dr. S. was extremely angry, raised his voice to her, and that she felt threatened by him. She claimed that he made racially and sexually charged comments to her, including telling her to go back to El Salvador and referring to all women as prostitutes. Although she reported his offer of money for sex, there is no evidence that she reported these other statements to Family Dental at that time. There is also no allegation that Dr. S. ever made similar comments to her after the Bicknell trip.

had researched his background and she gave them a Division of Occupational & Professional Licensing (DOPL) report and a police report, but they gave these documents back to her.[2] Ms. Hight stated that she was aware that Dr. S. was on probation with DOPL, but that his probation was not relevant to the sexual-harassment investigation. Ms. Miles advised Ms. Juarez to be careful about what she said about Dr. S., because it could be seen as retaliatory.

After this meeting, Ms. Juarez took medical leave from February 19-24, claiming stress and anxiety. While she was on medical leave, she submitted a complaint to DOPL alleging that Family Dental management was altering patient records to cover up for its poor record keeping. She admitted in her deposition that the only basis for this allegation was that she had observed Ms. Hight and other employees pulling and reading mass numbers of charts, which she said they normally did not do, and that she had seen a sticky note with Dr. S.'s name on one of the charts. Her complaint to DOPL also reiterated her sexual harassment claim against Dr. S. In response to Ms. Juarez's complaint, DOPL began an investigation.

On March 11, Family Dental placed both Ms. Juarez and Dr. S. on paid administrative leave, pending the outcome of the sexual harassment investigation.

---

[2]     These documents are not in the record on appeal.

Dr. S. resigned from Family Dental on March 22, indicating that he had accepted a position in another state. Ms. Juarez returned to work on March 29.

On May 18, Ms. Miles notified Ms. Juarez by letter that the sexual-harassment investigation had been completed. She explained that Family Dental had waited until the DOPL investigation involving the clinic was completed before making a final determination on the allegations of misconduct against Ms. Juarez and Dr. S. The letter noted the parties' conflicting stories and denials, and the lack of corroboration, and stated that Family Dental was unable to make a determination whether unlawful harassment had occurred. Ms. Miles concluded, "We will continue monitoring the work environment to ensure that you are not subjected to retaliation by others in the work place because of the complaint." Aplt. App., Vol. II at 487.

Ms. Juarez filed a complaint with the Utah Anti-Discrimination & Labor Division and the EEOC on July 14, 2004, claiming retaliation and discrimination based on race, color, sex, and national origin. In that complaint, she repeated her claim of sexual harassment by Dr. S., and stated that since making that claim she had been subject to "constant harassment and adverse employment actions." *Id.* at 489. She filed this action on January 19, 2005. After the close of discovery, Family Dental moved for summary judgment on the remaining claims[3] and the

---

[3]     The district court had previously dismissed Ms. Juarez's state law claims,
(continued...)

district court granted the motion in an order dated September 11, 2006 (Order). Ms. Juarez filed a timely appeal.

### *Ms. Juarez's Allegations and Evidence*

Ms. Juarez makes a series of allegations that fall roughly into four categories.

(1) Ms. Juarez alleges that Family Dental made changes to her job duties in retaliation for her making a sexual-harassment complaint against Dr. S. She claims that immediately after she returned from administrative leave, Mr. Palmer gave her a new job description that omitted any supervisory duties, he told her she would no longer be assisting dentists chairside, and she was made a permanent "runner."[4] She also complains that at this time Mr. Palmer offered her a receptionist job, but she declined to accept that position and was never required to take it.

The nature of the supervisory duties that she claims she lost is unclear from the record. When she pointed out the omission of these duties from her job description to Mr. Palmer, she admits that he assured her that her job had not

---

[3](...continued)
including her sole claim against the individual defendants, Ms. Hight and Erica Vekter, one of the dentists at Family Dental. Ms. Juarez has not appealed that ruling.

[4]    A dental assistant functioning as a runner does not work chairside with a particular dentist, but instead is responsible for keeping the clinic running smoothly.

changed.  The evidence showed that before she made her sexual-harassment complaint, her job duties included sometimes functioning as a runner.  Moreover, after returning from administrative leave, she did not work solely as a runner because she continued to assist dentists chairside two or three times a week.

(2)  Ms. Juarez also alleges that, in retaliation for her sexual-harassment complaint, clinic policies were selectively enforced against her, including policies regarding where to park, which door to use when entering the clinic, use of cell phones in the clinic, and not wearing dirty scrubs outside the clinic.  Ms. Juarez complains that she was the first person to be informed or reminded about these policies, but the evidence is undisputed that they were enforced with respect to all employees.

(3)  Ms. Juarez identifies several other actions which she characterizes as retaliation.  She asserts that Ms. Hight retaliated by telling her she would have to continue working with Dr. S., although the evidence is undisputed that they never worked together again after the Bicknell trip.  She contends that Ms. Hight also retaliated by telling her she could not consult an attorney until Family Dental's investigation was completed.  At the time she claims Ms. Hight made this statement, she had not yet made her complaint against Dr. S.  She ultimately testified that Ms. Hight told her that she could contact a lawyer, but asked her not to do so while the investigation was pending.  Ms. Juarez also claims that being

-7-

placed on administrative leave was retaliatory, as was Ms. Miles's admonishment not to discuss Dr. S.'s background in the workplace.

(4) Ms. Juarez contends further that she suffered retaliatory harassment by other Family Dental employees. She also claims that this harassment amounted to a hostile work environment based upon her Hispanic ethnicity and her gender. She testified that she only spoke of what happened during the Bicknell trip to Ms. Hight, Mr. Palmer, and one dentist, yet several other Family Dental employees talked to her about the incident. She said that after she made her sexual-harassment complaint other employees began pulling away from her, talking to her less, and giving her the cold shoulder. She testified that the shunning became worse after she returned from her administrative leave, when other employees gave her dirty looks and were cold and rude to her.

She identified three employees who made remarks to the effect that she was not wanted, not welcome, or that she should quit. In addition, she claimed that Mr. Palmer told her that if she were his wife, he would have asked her to quit. Ms. Juarez also testified that another employee told her she "was good only to do dishes at the office." Aplt. App., Vol. I at 39. She testified that she experienced the worst treatment from one employee, who she claims kept an eye on her, listened to her conversations, read her charts after she made entries in them, continually corrected her, followed her around, said unspecified mean things to

her, falsely accused her of saying other things, and once pushed her against a wall.

Regarding her ethnicity, she testified that Ms. Hight and a dentist criticized or commented on her English skills or her accent.[5] She also testified that this dentist told her, "Do you think you're going to get anything good out of this? Have you seen any Hispanic person in upper management? . . . you don't have the slightest chance to win against the State. They're smarter than you, stronger, and there's no Hispanics there. There's only white people there." *Id.*, Vol. II at 635-36 (quotation omitted). Ms. Juarez admitted that she did not report these alleged statements to anyone. She also took offense when someone—although she could not remember who—told her that her performance in her job was a big achievement in light of her coming from a third world country. Again, she admitted that she never complained to Family Dental about this alleged comment.

When Ms. Juarez complained to Mr. Palmer and Ms. Hight about how her co-workers were treating her after she returned from administrative leave, she testified that Mr. Palmer told her that it was not abnormal for the dentists and dental assistants to behave differently during a DOPL investigation. Mr. Palmer testified that he did observe a difference in the way that other employees interacted with Ms. Juarez, but both he and Ms. Hight also observed Ms. Juarez

---

[5] There is evidence that Ms. Juarez complained to Mr. Palmer about employees criticizing her English skills but there is no indication about whom she specifically complained.

turning her back on others and choosing to work alone. She does not dispute this evidence.

In May and June, 2004, a group of dentists wrote two letters–one to Ms. Hight and one to DOPL–complaining that Ms. Juarez was creating an atmosphere of mistrust and fear at Family Dental, in which they felt that their dental licenses were in jeopardy. They expressed concerns about retaliation by Ms. Juarez. She claims that these letters were orchestrated by Family Dental in retaliation for her sexual-harassment complaint.

## *Discussion*

Ms. Juarez argues on appeal that the district court erred in (1) excluding her affidavit; and (2) granting summary judgment on her retaliation and discrimination claims.

### *A. Exclusion of Ms. Juarez's Affidavit*

Family Dental filed its summary judgment motion after the close of discovery. In opposition to the motion, Ms. Juarez filed a lengthy declaration in the form of an affidavit. Family Dental argued that the affidavit was inconsistent with previous testimony and was created after-the-fact in an attempt to create a dispute of material fact.

The district court granted Family Dental's motion to strike her affidavit as an attempt to create sham issues of fact, citing our decisions in *Burns v. Board of County Commissioners*, 330 F.3d 1275 (10th Cir. 2003), and *Franks v. Nimmo*,

796 F.2d 1230 (10th Cir. 1986).  In *Franks* we held that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue" and we set forth the relevant factors to consider in evaluating an affidavit submitted after earlier inconsistent testimony:  "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."  796 F.2d at 1237.

Applying these factors, the district court cited a number of examples of inconsistencies between Ms. Juarez's affidavit and her deposition testimony, and found that "[i]n her deposition, Juarez either failed to mention or directly contradicted many of the essential claims in her affidavit—in short, the affidavit differs substantially from the deposition."  Aplt. App., Vol. I at 248.  The court excluded the affidavit in its entirety, concluding "[i]t is not feasible to exclude only parts of the affidavit because . . . . the portions of the affidavit consistent with the deposition are too enmeshed with unsupported assertions to allow the court to reasonably parse through and redact only the groundless portions."  *Id.* at 252.

Ms. Juarez argues on appeal that the district court erred in excluding her affidavit.  "We review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion."  *Lantec, Inc. v. Novell, Inc.*,

306 F.3d 1003, 1016 (10th Cir. 2002). "[W]e will not disturb the district court's decision unless we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (quotation and brackets omitted).

Ms. Juarez first argues that the district court abused its discretion in applying the "sham affidavit" standard to exclude a portion of her affidavit that did not contradict her deposition testimony. She included in her affidavit several statements regarding racial slurs she alleges were made by employees of Family Dental.[6] She also stated in her affidavit that she could not remember these remarks during her prior testimony. At her deposition Ms. Juarez testified regarding a few comments she considered to be racist and Family Dental then asked her to identify every racial slur she was aware of:

> Q.     Anything else?
>
> A.     Many comments, but I don't remember at this moment.
>
> Q.     I want–whatever specific comments were made in the office, I want to know who made them, what they said; and if you can remember when they said it, if it's related to your race and it's negative.
>
> A.     There is so many, but I don't remember at this moment.

---

[6]     Some of these alleged comments were overtly racist, while others Ms. Juarez attributes as racist. For example, she claims that Family Dental employees made statements including: "I would never trust [Hispanic people] at work"; and "Take your shit somewhere else, we don't want you here." Aplt. App., Vol. I at 5-6.

Q.     Okay.  Did you write them down?

A.     Yes, some of them.

Q.     Where?

A.     In my journal.

Q.     Okay.  Anywhere else?

A.     No.

* * *

Q.     Aside from that journal, is there any other document that reflects these negative racial statements that were made about you in the workplace?

A.     Not that I know.

Q.     Okay.  Do you have any reason to believe that your memory is going to be better in the future than it is today?

A.     No.  It's just that there's so much to this that is hard to remember exactly everything what person said and when was said.

Q.     Okay.  I understand that.  And if you need more time to think about it, I'll give you as much time as you need.  But I'd like to know specifically the racially derogatory statements that were made in the workplace.

A.     I really just–there's so much to this.  It's one year and a half worth of information.

Q.     Okay.  So would it be fair to say that that's your best recollection as you sit here today?

A.     Yes.

* * *

-13-

Q.     Okay.  Were there any other statements that were made that you haven't already testified to that lead you to believe that any of the actions that were taken by the Family Dental Clinic were taken either because you were a woman or because you were a Hispanic?

A.     I don't remember more.

*Id.*, Vol. II at 638-39, 645-46.

After Ms. Juarez's deposition, Family Dental asked her to produce her journal, but she refused to do so, asserting that all of the information in it was privileged and not subject to discovery because it was prepared in anticipation of litigation.  Then, after discovery was closed, and in responding to defendant's summary judgment motion, Ms. Juarez relied on the entries in her journal as the bases for her affidavit statements regarding racist remarks.  She now argues that this portion of her affidavit did not change her prior testimony, but only provided information that she testified she could not recall at her deposition.  Therefore, she contends that the district court abused its discretion because the threshold determination under the sham affidavit standard is the existence of prior deposition testimony that was subsequently changed by an affidavit.

While Ms. Juarez is correct that the evidence of racial slurs in her affidavit did not directly contradict her deposition testimony, we disagree that the district court abused its discretion in excluding those statements under the circumstances presented.  We have upheld the exclusion of affidavits in other cases with similar facts.  For example, in *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854 (10th Cir.

-14-

1999), after the close of discovery, plaintiff submitted an affidavit from a witness "in which he arguably contradicted his deposition, or at least more clearly recalled discussions and meetings." The district court excluded the affidavit because it "represent[ed] an attempt to create a sham issue of fact" and "plaintiffs were deliberately sandbagging defendants." *Id.* at 855 (quotations omitted). We held that the district court did not abuse its discretion in excluding the affidavit. *Id.* at 855.

Here, the district court considered Family Dental's attempts to obtain discovery of every racial slur that Ms. Juarez alleged, both during her deposition and afterward, as well as her decision to claim that the journal was privileged after she had testified that it contained her only notes memorializing additional racial comments. The court observed that the timing of her affidavit "places the defendant at a disadvantage, depriving Family Dental of any chance to pursue discovery on the subjects covered in the affidavit." Under the circumstances presented in this case, the district court did not make "a clear error of judgment or exceed[] the bounds of permissible choice" in excluding Ms. Juarez's affidavit statements detailing additional racial slurs. *Lantec*, 306 F.3d at 1016.

Ms. Juarez also argues that the district court erred in excluding her affidavit because each of the *Franks* factors weighs against striking it. We have reviewed the record and find no abuse of discretion in the district court's application of these factors.

-15-

## B. Summary Judgment on Ms. Juarez's Claims

We apply our familiar summary judgment standards in reviewing the district court's order:

> We review a district court's decision granting summary judgment de novo. Summary judgment is appropriate only if the pleadings, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We resolve all factual disputes and draw all reasonable inferences in favor of the non-moving party.

*McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (citation omitted). Ms. Juarez contends that she presented sufficient evidence in support of her claims for retaliation, disparate treatment, sexual harassment, and hostile work environment to avoid summary judgment.[7]

### 1. Retaliation

Title VII makes it unlawful for an employer "to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under the *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), a plaintiff first must establish the

_____

[7]    Ms. Juarez includes in her opening brief separate sections labeled "Title VII" and "Harassment." We have considered the arguments she makes in these sections as they relate to the claims she alleged.

three elements of a prima facie claim for retaliation under Title VII: "(1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action." *McGowan*, 472 F.3d at 741.

Regarding the second prong, "[A]n employer's action is adverse under Title VII if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 742 (quoting *Burlington N. & Santa Fe Ry. v. White*, 126 S.Ct. 2405, 2415 (2006) (quotation omitted)). "The materiality of a claimed adverse action is to be determined objectively; 'petty slights, minor annoyances, and simple lack of good manners' will not deter 'a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 126 S. Ct. at 2415). Title VII "does not set forth a general civility code for the American workplace." *White*, 126 S.Ct. at 2415 (quotation omitted).

The district court concluded that Ms. Juarez produced sufficient evidence that she engaged in protected activity in making her sexual-harassment complaint against Dr. S. to Family Dental in January 2004. But, after reviewing each of her allegations of materially adverse action by Family Dental, the court held that she failed to satisfy the second prong. It concluded that the record failed to show material disputed facts that defendant changed her job duties in any material way,

-17-

selectively enforced policies against her, or transferred her to a different office solely to accommodate Dr. S. Regarding Family Dental placing Ms. Juarez on paid administrative leave and advising her not to discuss Dr. S.'s background in the workplace, the court reasoned that these actions would not constitute material adverse actions to a reasonable employee in the context of the competing sexual-harassment complaints under investigation.

The district court acknowledged that "co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998). "However, because harassment must be intentional on the part of the employer, . . . an employer can only be liable for co-workers' retaliatory harassment where its supervisory or management personnel either (1) orchestrate the harassment, or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." *Id.* at 1265. Here, the district court concluded that

> [u]ltimately, the record fails to support an inference Family Dental orchestrated or had knowledge of co-worker harassment targeting Juarez sufficient to impute liability to Family Dental. After *White*, a person may suffer actionable retaliation even without suffering a tangible employment action, but Juarez's allegations are insufficient to establish actionable retaliation. A jury would not reasonably find the actions Juarez alleges, even in totality, would have dissuaded a reasonable employee from making a complaint.

Aplt. App. at, Vol. I at 264 (footnote omitted).

-18-

On appeal, Ms. Juarez does not identify any error in any of the district court's specific conclusions regarding her evidence of retaliation. She argues only that Family Dental's actions must be examined in their entirety, but there is no indication that the district court failed to do so. It found that "[e]ven in the aggregate, Ms. Juarez's evidence of retaliation by Family Dental fails to meet the *White* standard." *Id.* In her discussion of the evidence, she relies primarily on her affidavit, which was excluded, and her other assertions are largely unsupported by her citations to the record.

We have reviewed the record de novo and for substantially the same reasons as the district court's Order, we affirm the grant of summary judgment in favor of Family Dental on Ms. Juarez's retaliation claim.

### 2. *Disparate Treatment*

Ms. Juarez claims that she was treated differently from Dr. S. because of her race and gender. A prima facie case of racial discrimination based upon disparate treatment requires a plaintiff to show: "(1) that [s]he is a member of a [protected class], (2) that [s]he suffered an adverse employment action, and (3) that similarly situated employees were treated differently." *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). In the context of a Title VII discrimination claim, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

-19-

causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quotation omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *McGowan*, 472 F.3d at 745 (quotation omitted).

The district court held that Ms. Juarez satisfied the first prong of the prima facie test, because she is Hispanic and female, but that she failed to satisfy the other two elements. Noting that her evidence was insufficient to satisfy the lesser burden to show a "material adverse action" in support of her retaliation claim, the court concluded that she failed to present evidence that she suffered an adverse employment action amounting to a significant change in her employment status, as required for her discrimination claim. Furthermore, the court held that the evidence did not support an inference that Ms. Juarez and Dr. S. were similarly situated or treated significantly differently. In fact, the record shows Family Dental put both Ms. Juarez and Dr. S. on administrative leave, investigated both of their complaints, and ultimately found neither to be substantiated.

On appeal, Ms. Juarez does not address the district court's holding that she and Dr. S. were not similarly situated. She argues that the evidence shows she was stripped of her managerial duties and subjected to a hostile work environment, while Dr. S. was not. In support of this contention, she once again

directs this court primarily to her affidavit.[8]  We have reviewed the record de novo and for substantially the same reasons as the district court's Order, we affirm the grant of summary judgment in favor of Family Dental on Ms. Juarez's disparate treatment claim.

### 3. *Quid Pro Quo Sexual Harassment*

"The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct."  *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir. 1987).  "An employer is vicariously (or indirectly) liable for compensatory damages when a supervisor with immediate (or successively higher) authority over the employee perpetrates the Title VII violation."  *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (quotation omitted).  The operative question is whether the harassing employee "had sufficient control over the plaintiff to be considered her supervisor." *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1271 (10th Cir. 1998).  "In addition, an employer may be vicariously liable when the harassing employee has apparent authority–gives the false impression that the actor was a supervisor,

---

[8]    In addition to the evidence she cited in support of her retaliation claim, she also refers generally to the evidence she cited in her opposition to summary judgment in the district court, which again primarily relied upon her affidavit.

-21-

when he in fact was not, and the victim's mistaken conclusion was a reasonable one." *Wilson v. Muckala*, 303 F.3d 1207, 1220 (10th Cir. 2002) (quotation and brackets omitted).

The district court held that there was no evidence that Ms. Juarez's job benefits were in any way conditioned upon her acquiescing in Dr. S.'s alleged sexual proposal. Moreover, the court concluded that no evidence supported her contention that Dr. S. had supervisory authority over her. She argues on appeal that Family Dental "altered [her] workplace environment and duties when [she] refused to comply with Dr. [S.'s] request." Aplt. Opening Br. at 18. While she recognizes that her claim for quid pro quo sexual harassment must fail absent evidence that Dr. S. was her supervisor, *see id.*, she merely refers to her "understanding that [he] was her supervisor," *id.* at 21, and cites no evidence supporting that contention.

Again, we have reviewed the record de novo and for substantially the same reasons as the district court's Order, we affirm the grant of summary judgment in favor of Family Dental on Ms. Juarez's quid pro quo sexual- harassment claim.

### 4. *Hostile Work Environment*

Finally, Ms. Juarez claims that she was subjected to a hostile work environment because she is Hispanic and a woman.

"In determining whether an actionable hostile work environment existed, we look to all the circumstances, to see if the workplace was permeated with

discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment, and if the plaintiff was subjected to this abusive environment because of her [protected class]." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1169-70 (10th Cir. 2007) (quotations, citation, and alterations omitted). Evidence of sporadic slurs is insufficient to support a claim; "there must be a steady barrage of opprobrious racial [or sexual] comments." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). "General harassment if not racial or sexual is not actionable." *Id.* But, when considering a claim of hostile work environment, we "view the evidence in context, not simply in its segmented parts." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1096-97 (10th Cir. 1999) (holding conduct not explicitly sexual in nature is relevant "if it reasonably could be inferred [it] was related to gender or arose out of context in which admittedly sex and gender-related conduct occurred"); *see also Bolden*, 43 F.3d at 551 (considering racial comments along with general ridicule of the plaintiff). We consider "all the circumstances . . . from the perspective of a reasonable person in the plaintiff's position." *Montes*, 497 F.3d at 1170.

The district court noted that Ms. Juarez relied on the same evidence in support of her retaliation and hostile work environment claims, and as such, her hostile work environment claim must fail. "[J]ust as a reasonable jury could not find the conduct to be materially adverse for retaliation purposes, a reasonable

jury could not find it to be so severe or pervasive as to alter the conditions of Juarez's employment or impede her ability to do her job." Aplt. App., Vol. I at 272.

The district court noted the evidence of overtly racial or sexual conduct qualified as, at most, a few isolated incidents. Ms. Juarez alleged that the general harassment she experienced was both in retaliation for her sexual-harassment complaint against Dr. S, and based upon race and gender animus. But the district court concluded that "it is not reasonable to infer the sex- and race-related conduct of [Dr. S.] so poisoned Family Dental or its other employees toward Juarez that their conduct arose out of gender- or race-related hostility." *Id.* at 273. The court also held that the evidence failed to support "an inference Family Dental knew or should have known of most of the alleged co-worker harassment." *Id.* at 275. Finally, after Ms. Juarez reported sexual harassment by Dr. S., he did not harass her again, indicating that Family Dental's remedial response was reasonable and effective.

We have reviewed the record de novo and for substantially the same reasons as the district court's Order, we affirm the grant of summary judgment in favor of Family Dental on Ms. Juarez's hostile work environment claim.

### *Conclusion*

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge