**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

YVONNE MACIAS,

      Plaintiff - Appellant/Cross-Appellee,

v.

SOUTHWEST CHEESE COMPANY, LLC,

      Defendant - Appellee/Cross-Appellant.

Nos. 14-2109 & 14-2154
(D.C. No. 2:12-CV-00350-LH-WPL)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

      Yvonne Macias appeals the district court's grant of summary judgment to

Southwest Cheese Company, LLC (SWC) on her claims alleging a hostile work

environment, quid pro quo sexual harassment, and retaliation under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) and the

New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -14 (NMHRA). On

cross-appeal, SWC challenges the district court's denial of supplemental jurisdiction

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

over other state-law claims and its order declining to alter or amend that judgment. *See* Fed. R. Civ. P. 59(e). Exercising jurisdiction under 28 U.S.C. § 1291, we reverse summary judgment on the hostile work environment claim, vacate the denial of supplemental jurisdiction, and affirm in all other respects.

## I. BACKGROUND

### A. Factual Background

The summary judgment record, construed in the light most favorable to Ms. Macias as the non-moving party, *see Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002), establishes that she worked for SWC between February 2009 and February 2011. Shortly after she started, in June 2009, a male employee named Cody Stewart exposed himself to Ms. Macias and Margarita Holguin while at work. Ms. Macias reported the incident to a shift supervisor but did not know if anything was done with her complaint. Ms. Holguin also reported the incident and was fired the following week.[1] After the incident, Ms. Macias became fearful of Mr. Stewart. She noticed he would go upstairs and "sexually leer" at her. Aplt. App. at 51. In 2008, Mr. Stewart had photographed his genitals at an off-site SWC social function with co-workers and then passed the picture around to several SWC managers, including the director of human resources. *Id.* at 56. Additionally,

---

[1] SWC offered evidence from its human resources director, Brenda Miller, who stated that Ms. Holguin was a temporary employee who was not retained because she had falsified her educational background. Ms. Holguin, however, stated that she was fired in retaliation for reporting Mr. Stewart.

Ms. Macias learned that in October 2010, Mr. Stewart had twice exposed himself to another woman, Lorena Chavez-Acosta.[2]

By January 2011, Ms. Macias, who had requested to be moved to a different shift, was working days instead of nights. Between January and February of that year, she claims that a day-shift supervisor, Jose Borjas, became obsessive toward her. She recalled an incident in which Mr. Borjas asked her in a flirtatious manner, "why are you so quiet," to which Ms. Macias replied, "well, I'm always busy," and then ignored him. *Id.* at 51 (internal quotation marks omitted). Things changed after that, with Mr. Borjas repeatedly calling her into his office.[3] Other employees would laugh when Mr. Borjas called her, and Ms. Macias felt uncomfortable because he would stand close to her and stare at her in a "sexually provocative manner." Aplt. App. at 51. Ms. Macias said he became angry and made her job miserable because she refused to reciprocate his flirtations. She never complained to management, though, other than to ask to be moved to another shift because she was tired of him. Aplee. App. at 349-55.

---

[2] We recently affirmed the grant of summary judgment to SWC on separate claims brought by Ms. Chavez-Acosta. *See Chavez-Acosta v. Sw. Cheese Co.,* ___ F. App'x ___, 2015 WL 1768989, at *1 (10th Cir. Apr. 20, 2015).

[3] Ms. Macias gave seemingly conflicting statements about why Mr. Borjas called her into his office. She initially testified at her deposition that he had always asked her work-related questions. *See* Aplee. App. at 346-47. But in her post-deposition affidavit, she stated that he would call her into his office "for absolutely no legitimate work related reason." Aplt. App. at 51. The district court found no conflict between these two statements, *id.* at 116-17, and SWC does not challenge this ruling on appeal, *see* Aplee. Resp. Br. at 13-14, 21-26.

Eventually, on February 8, 2011, Ms. Macias was fired after accruing twelve disciplinary actions. According to the human resources director, Ms. Macias had "consistent performance failures and attendance problems" that ultimately resulted in her termination. *Id.* at 155.

## B. Procedural Background

Several months later, Ms. Macias filed this action in state court, raising claims under Title VII and the NMHRA for a hostile work environment and quid pro quo sexual harassment, as well as retaliation under the NMHRA. She also alleged state-law claims for breach of contract, intentional infliction of emotional distress (IIED), and negligent supervision. SWC removed the case to federal court and moved for summary judgment.[4] In opposing summary judgment, Ms. Macias submitted several affidavits, portions of which the district court excluded. The court then granted summary judgment to SWC on the hostile work environment, sexual harassment, and retaliation claims. The court declined, however, to exercise supplemental jurisdiction over the state-law claims and instead remanded those claims to state court. SWC moved under Rule 59(e) to alter or amend that ruling, but the district court denied SWC's request. This appeal followed.

---

[4] Upon removal to federal court, Ms. Macias amended her complaint to add a claim for race discrimination under 42 U.S.C. § 1981. The district court dismissed that claim at the pleading stage, and Ms. Macias does not appeal that ruling.

- 4 -

## II.  DISCUSSION

In appeal number 14-2109, Ms. Macias challenges the exclusion of portions of affidavits that she submitted in opposition to SWC's summary judgment motion.  She also contests the grant of summary judgment on her claims alleging a hostile work environment, quid pro quo sexual harassment, and retaliation.  In appeal number 14-2154, SWC cross-appeals the district court's refusal to exercise supplemental jurisdiction over the state-law claims and its denial of the Rule 59(e) motion.

### *A.  Affidavits*

Ms. Macias first challenges the district court's exclusion of fifteen statements and paragraphs contained in five different affidavits that she submitted with her summary judgment response.  "[W]e review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion." *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854 (10th Cir. 1999).  The district court struck portions of affidavits from Ms. Macias, Sarah Stewart (Mr. Stewart's ex-wife), and former coworkers Lorena Chavez-Acosta, Rebecca Martinez,[5] and Misty English.  In each instance, the court determined these affidavits contained statements that either attempted to create sham fact issues, *see Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of

---

[5] We recently affirmed the grant of summary judgment to SWC on separate claims brought by Ms. Martinez.  *See Martinez v. Sw. Cheese Co.*, ___ F. App'x ___, 2015 WL 3775671, at *1 (10th Cir. June 18, 2015).

fact merely by submitting an affidavit contradicting his own prior testimony."), were predicated on inadmissible hearsay, *see Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201-02 (10th Cir. 2015) (holding that inadmissible hearsay statements cannot support a plaintiff's opposition to summary judgment), or were made without personal knowledge, *see Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) ("Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." (internal quotation marks omitted)).

Our review of the court's decision fails to disclose any abuse of discretion. Ms. Macias initially contends the district court erred in striking her statement that she reported Mr. Borjas's conduct to human resources director Brenda Miller. But her deposition testimony indicated she did not complain to anyone about the time Mr. Borjas asked her why she was so quiet, *see* Aplee. App. at 349, or the times he stared at her, *id.* at 350. She also said she did not complain to anyone in management about him standing too close to her. *Id.* at 351. In fact, Ms. Macias could not remember speaking to anyone in human resources about Mr. Borjas, *id.* at 355, or even requesting to be moved to a different shift, *id.* at 409-10. This testimony plainly contradicts Ms. Macias's post-deposition affidavit statement that she complained to Ms. Miller about Mr. Borjas. Consequently, the district court acted within its discretion in striking it.

Ms. Macias disagrees, suggesting her inability to recall talking to Ms. Miller *is* consistent with her statement that she complained to Ms. Miller. Even if we could

see such consistency, the argument would still fail because we have upheld the exclusion of affidavits for creating sham fact issues when an affiant offers information that she claimed she could not recall at her prior deposition. *See, e.g.*, *Juarez v. Utah*, 263 F. App'x 726, 734-36 (10th Cir. 2008) (unpublished) (affirming the exclusion of an affidavit that provided evidence of alleged racial slurs that plaintiff claimed she could not recall at her deposition));[6] *Mitchael*, 179 F.3d at 854-55 (affirming the exclusion of an affidavit "in which [the affiant] arguably contradicted his deposition, or at least more clearly recalled discussions and meetings"). Given these authorities, the court did not abuse its discretion in excluding the statement.[7]

We need not individually discuss Ms. Macias's remaining arguments. The district court's detailed and cogent analysis thoroughly explained why each of the

---

[6] Unpublished opinions may be cited for their persuasive value. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 n.2 (10th Cir. 2015); 10th Cir. R. 32.1.

[7] Ms. Macias also asserts that she tried to complain to Ms. Miller but Ms. Miller refused to listen. *See* Aplt. Br. at 12 ("[Brenda Miller] did not want to go into details, so I refused to sign [the disciplinary form]" (internal quotation marks omitted)). This argument does not reconcile the contradiction between Ms. Macias's affidavit and her deposition, and in any event, it is clear from the record that Ms. Miller had refused to go into details about a production error that resulted in Ms. Macias's termination—*viz.*, her failure to add culture to a vat of cheese—not her purported attempt to complain about Mr. Borjas. *See* Aplee. App. at 155 (Miller Aff., para. 8) (explaining that Ms. Macias was fired for failing to add culture to a vat); 412 (Macias Dep.) (explaining that Ms. Macias refused to sign a disciplinary action form because Ms. Miller "did not want to go into details"); *see also* Aplt. App. at 54 (Macias Aff., para. 20) (stating that Ms. Miller refused to go into details about the cause for Ms. Macias's termination).

challenged statements was subject to exclusion. We affirm the district court's

exclusion of the relevant portions of the affidavits for substantially the same reasons

stated by the district court in its order dated June 11, 2014.

### B. *Summary Judgment*

We proceed, then, to review de novo the district court's summary judgment

rulings, applying the same standard as the district court and viewing the evidence in

the light most favorable to Ms. Macias as the non-moving party. *Morris v. City of

Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012). "Summary judgment should be

granted 'if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law.'" *Felkins v. City of

Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "If a

reasonable jury could return a verdict for the nonmoving party, summary judgment is

inappropriate." *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (internal

quotation marks omitted).

### 1. Hostile Work Environment[8]

*a. Application of Time-Bar and Exhaustion Principles*

Before considering the merits of Ms. Macias's hostile work environment

claim, we confront SWC's parallel arguments that the claim is untimely and

unexhausted. Under the relevant provisions of both Title VII and the NMHRA, a

---

[8] The same standards govern Title VII and NMHRA claims. *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1213 n.2 (10th Cir. 2008); *Rodriguez v. N.M. Dep't of Workforce Sols.*, 2012-NMCA-059, ¶ 14, 278 P.3d 1047, 1050 (N.M. Ct. App. 2012).

plaintiff must file a charge of discrimination within three hundred days of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); N.M. Stat. Ann. § 28-1-10(A); *see also Gad v. Kan. State Univ.*, 787 F.3d 1032, 1039-40 (10th Cir. 2015) (discussing various exhaustion requirements, including timely filing of administrative charge, and holding that absent express congressional direction, such requirements should not be treated as jurisdictional). Ms. Macias filed her amended charge on July 11, 2011, so her filing period encompasses events that occurred within three hundred days prior to that date, or September 14, 2010. Because Mr. Stewart exposed himself to Ms. Macias and Ms. Holguin in June 2009, well before the filing period, SWC contends the claim is time-barred to the extent it is predicated on that act. We disagree.

In the context of a hostile work environment claim, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). So long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court." *Id.* The caveat is that "there must be a relationship between the acts alleged after the beginning of the filing period and the acts alleged before the filing period." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005). Pre- and post-filing-period conduct constitutes the same hostile environment if it "'involved the same type of employment actions, occurred relatively frequently,

and [was] perpetrated by the same managers.'" *Id.* at 1309 (brackets omitted) (quoting *Morgan*, 536 U.S. at 120).

As the district court recognized, Ms. Macias knew that Mr. Stewart had twice exposed himself to Ms. Chavez-Acosta in October 2010 during the filing period, which contributed to Ms. Macias's subjective perception of her work environment. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1146 (10th Cir. 2008) ("[E]vidence of a general work atmosphere, including evidence of harassment of other [protected groups], may be considered in evaluating a claim, as long as [the plaintiff] presents evidence that he knew about the offending behavior." (brackets and internal quotation marks omitted)). And because Mr. Stewart's act of exposing himself in June 2009 bore a sufficient relationship to his acts of exposing himself to Ms. Chavez-Acosta in October 2010 during the filing period, the June 2009 exposure incident is part of the same hostile work environment. Thus, the claim is not time-barred to the extent it relies on the June 2009 exposure.

Nevertheless, SWC protests that Ms. Macias never exhausted a discrete claim implicating Ms. Chavez-Acosta. To satisfy the exhaustion requirement, a claim must be "within the scope of the administrative investigation that could reasonably be expected to follow from the allegations raised in the charge." *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015). Allegations are "minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement" when they "identif[y] the type of discrimination complained of, the alleged harasser, and an

- 10 -

approximate time period." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998).  In her administrative charge, Ms. Macias alleged continuing-action sex discrimination and retaliation spanning from February 2009 through January 2011.  And in her attached affidavit, she identified Mr. Stewart by name and alleged that he had exposed himself to her.  These allegations were sufficient to exhaust the hostile work environment claim.

### b. *Merits*

Turning to the merits, we conclude that Ms. Macias has demonstrated a material issue of fact precluding summary judgment on her hostile work environment claim.  To establish a sexually hostile work environment, Ms. Macias must "show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris*, 666 F.3d at 663 (internal quotation marks omitted).  In assessing whether conduct was sufficiently severe, we examine the "totality of circumstances, and consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 664 (brackets and internal quotation marks omitted).  The environment must be "objectively and subjectively hostile or abusive." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Regarding the first element (whether the conduct was due to Ms. Macias's gender), the district court apparently assumed that Mr. Stewart's behavior was motivated by gender and that, while some of Mr. Borjas's conduct was not, some may have been. Apart from a passing reference, SWC appears to accede to the district court's assessment. *See* Aplee. Resp. Br. at 33 ("The allegations as to Borjas do not concern gender-motivated behavior, and the few that arguably do—staring, occasionally standing too close to Macias, and one instance of a 'clumsy flirtation,'—do not rise to the level of objectively 'severe' or 'pervasive' conduct . . . ." (citation omitted). We conclude that the evidence was sufficient to establish gender-motivated behavior. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) ("[T]he inference [of gender-motivated behavior] is easy to draw if the harasser and the harassed employee are of opposite sexes, at least when the conduct at issue involves explicit or implicit proposals of sexual activity." (internal quotation marks omitted)).

As to the second element concerning the severity or pervasiveness of the conduct, the district court concluded that the combined conduct of Mr. Stewart and Mr. Borjas was neither severe nor pervasive enough because it transpired over twenty months. *See* Aplt. App. at 159 (citing *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998)). But unlike *Penry*, this case involves more than inappropriate comments and offensive touching over a three-year period. *See* 155 F.3d at 1260-61. Indeed, although SWC attempts to characterize this claim as premised on a single episode of harassment, Mr. Stewart's act of exposing himself

- 12 -

occurred three times with three different women—twice with Ms. Chavez-Acosta and once with Ms. Macias and Ms. Holguin.[9] Moreover, his conduct was more than a mere offensive utterance; it was not only physically threatening and humiliating—if true, it was also criminal, *see* N.M. Stat. Ann. § 30-9-14. The environment was objectively hostile, and Ms. Macias subjectively perceived it to be so, fearing that Mr. Stewart might expose himself to her again or assault her in some way. Under these circumstances, Mr. Stewart's act of exposing himself, coupled with his alleged sexual leering and the conduct of Mr. Borjas, demonstrates a triable factual issue regarding the severity and pervasiveness of the alleged harassment.

SWC resists this conclusion, suggesting that we have recognized severe though limited harassment only in cases involving sexual assault. *See* Aplee. Resp. Br. at 34-35. But the legal standard for assessing severity does not require physical contact. *See Wright v. Rolette Cty.*, 417 F.3d 879, 885 (8th Cir. 2005) (rejecting argument that defendant's conduct could not constitute sexual harassment absent allegations that he touched or made sexual advances toward the plaintiff). Rather, we evaluate the totality of the circumstances and note that, even without allegations of physical

---

[9] We have rejected the assertion "that a single incident of physically threatening conduct can never be sufficient to create an abusive environment." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998). Indeed, our cases recognize that an isolated incident of harassment, if extremely serious, can create a hostile work environment. *See MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (noting that "courts should filter out . . . isolated incidents (unless extremely serious)"); *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 n.5 (10th Cir. 2001) (recognizing that a single incident of sexual harassment can be sufficient to create a hostile work environment).

contact, courts have rejected summary judgment where limited episodes of harassment are extremely serious. *See, e.g., Howley v. Town of Stratford*, 217 F.3d 141, 148-49, 154-55 (2d Cir. 2000) (reversing summary judgment where plaintiff was subjected to a single "obscene harangue" followed by other non-physical harassment); *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (reversing summary judgment where defendant sent plaintiff two bizarre letters and arranged to be transferred back to her office following a six-month separation). Moreover, "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (internal quotation marks omitted). Given these authorities, we cannot say as a matter of law that the conduct here was not extremely serious, particularly when we have previously characterized, albeit without analysis, a defendant's act of exposing himself as "extreme" sexual harassment. *Hendry v. Schneider*, 116 F.3d 446, 447, 450 (10th Cir. 1997); *accord Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 102-04 (3d Cir. 2009) (recognizing a hostile work environment existed where there was evidence of four indecent exposures and pornography viewed by male coworkers). A reasonable jury could reach a similar conclusion in this case.

*c. Liability*

SWC urges us to affirm the district court on the alternative ground that Ms. Macias cannot establish a viable theory of liability.[10]  According to SWC, vicarious liability is not an option because Mr. Stewart lacked authority to take "tangible employment actions" against her.  *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2454 (2013).  Nor is it liable on a negligence theory, SWC contends, because it had neither actual nor constructive knowledge of the alleged harassment.  We need not decide whether SWC could be vicariously liable for Mr. Stewart's misconduct because the record reveals a material factual dispute concerning SWC's negligence.

"In general, an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014) (internal quotation marks omitted).  Under a negligence theory, "an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it."  *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2664 (2014).

---

[10] The district court, having granted summary judgment on the severity and pervasiveness of the harassment, did not reach the issue of liability.  Ms. Macias did not analyze the issue of liability in her opening brief but appropriately addressed it in her reply brief.  *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (explaining that an appellant must explain in the opening brief why the district court was wrong and may respond in a reply brief to potential alternative grounds for affirming); *United States v. Brown*, 348 F.3d 1200, 1213 (10th Cir. 2003) ("When an appellee raises in its answer brief an alternative ground for affirmance, the appellant is entitled to respond in its reply brief.").

An employer usually has actual knowledge when the employee reports the harassment to a management-level employee and constructive knowledge when the harassment is so pervasive that the employer should have known the harasser was a "dangerous employee." *Kramer*, 743 F.3d at 755. In assessing constructive knowledge, evidence the harasser has harassed other employees may be relevant, "but the 'extent and seriousness of the earlier harassment and the similarity and nearness in time to the later harassment should be factors in deciding whether to allow the evidence of harassment of others to prove notice.'" *Id.* at 756 (quoting *Hirase-Doi v. U.S. West Comms., Inc.*, 61 F.3d 777, 783-84 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998)).

We see at least two material factual disputes concerning SWC's actual knowledge. First, Ms. Macias testified at her deposition and stated in her affidavit that she reported the June 2009 exposure to a shift supervisor, Bryant Fernandez.[11] Ms. Holguin also reported the June 2009 exposure, but nothing was done about it, and as a consequence, Mr. Stewart allegedly exposed himself twice more to Ms. Chavez-Acosta. Attempting to avoid any factual dispute regarding its actual

---

[11] SWC does not dispute that Mr. Fernandez qualifies as a "management-level employee," which "for the purposes of imputing knowledge of co-worker harassment to the employer, need only be someone who has at least some authority over the plaintiff or at least some control over the working environment." *Kramer*, 743 F.3d at 755 n. 19; *see* 29 C.F.R. § 1604.11(d) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment of employees in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct . . . .").

knowledge, SWC ignores the reports of Ms. Macias and Ms. Holguin and instead focuses on events preceding and post-dating the June 2009 exposure. *See* Aplee. Resp. Br. at 37-39. But in doing so, SWC fails to dispute, much less rebut, evidence of notice about Mr. Stewart's exposures during the course of the alleged hostile work environment. A reasonable jury could conclude that these reports of the June 2009 exposure gave SWC actual notice of Mr. Stewart's harassment.

A second material fact issue concerns the November 2008 episode when Mr. Stewart photographed his genitals and then passed the picture around to several managers, including Ms. Miller, the director of human resources. This incident preceded Ms. Macias's employment at SWC, but it is still relevant to notice. The inquiry is not whether Ms. Macias had knowledge of the incident or whether the incident contributed to the hostile work environment—it clearly did not. Rather, the question is whether the incident could have triggered SWC's duty to respond or at least put SWC on notice that Mr. Stewart posed a potential threat to the work environment. For example, in *Debord* we considered evidence of alleged harassment that occurred some three years before the plaintiff was hired. 737 F.3d at 651. Although we determined the evidence was insufficient to provide the employer with actual knowledge, we reached that conclusion because the evidence failed to show "the extent and seriousness of the earlier harassment and [its] similarity and nearness in time to the later harassment." *Id.* (brackets and internal quotation marks omitted).

A reasonable jury could conclude that Mr. Stewart's act of photographing his genitals to share with managers at an off-site co-worker function sponsored by SWC

is serious and similar to his act of exposing himself to Ms. Macias at work.

Moreover, the incident in November 2008 was close enough in time to the June 2009

exposure to create a fact issue regarding whether SWC should have known about

Mr. Stewart's potential for the type of inappropriate conduct that occurred a few

months later. *See Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 41 (1st Cir. 2011)

(holding that conduct at an off-site going-away party was relevant to the hostile work

environment claim because it showed notice to the employer "and toleration of a

general climate of offensive remarks and displays"); *see also Parrish v. Sollecito*,

249 F. Supp. 2d 342, 351-52 (S.D.N.Y. 2003) (explaining that evidence of off-site

conduct may be relevant because the employment relationship "often carries beyond

the work station's physical bounds and regular hours," and "often such outside

misbehavior rebounds and transposes its consequences inside the actual workplace").

Although the panel in *Chavez-Acosta v. Southwest Cheese Co.,* ___ F. App'x

___, 2015 WL 1768989, at *7 (10th Cir. Apr. 20, 2015), reached a different

disposition on the hostile work environment claim in that case, there are significant

evidentiary distinctions between the two cases.[12]  In *Chavez-Acosta*, there was no

evidence that the October 2010 exposures were reported to anyone at SWC until

Ms. Chavez-Acosta filed her administrative charge with the New Mexico Human

---

[12] The panel in *Martinez v. Southwest Cheese Co.*, ___ F. App'x ___, 2015 WL 3775671, at *4 (10th Cir. June 18, 2015), similarly affirmed summary judgment on the hostile work environment claims, but it did so on the procedural ground that the administrative charge of discrimination was not filed within 300 days of the alleged harassment.

Rights Bureau. *See id.* at *2,7. Nor was there evidence that the June 2009 exposure involving Ms. Macias and Ms. Holguin was reported to an appropriate management-level employee. *Id.* Here, the evidence plainly shows that both Ms. Macias and Ms. Holguin reported the June 2009 exposure to a management-level supervisor. Additionally, in *Chavez-Acosta*, without evidence that the June 2009 exposure had been reported to SWC, and absent evidence that Ms. Chavez-Acosta had reported the October 2010 exposures, the only other potential notice was the November 2008 photographing incident, which was nearly two years removed from the October 2010 exposures. But here, only seven months separated the photographing incident from the June 2009 exposure to Ms. Macias and Ms. Holguin. Given these distinctions, we remand the hostile work environment claim for trial.

## 2. Quid Pro Quo Sexual Harassment

To survive summary judgment on her quid pro quo sexual harassment claim, Ms. Macias must show a reasonable jury could have found that Mr. Borjas "conditioned concrete employment benefits on her submission to sexual conduct and had her fired when she did not comply." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1060 (10th Cir. 2009).[13] We understand Ms. Macias's claim to allege that Mr. Borjas conditioned the benefit of continued employment on her submission to his sexual advances, and when she refused to engage in a sexual relationship, he

---

[13] The term "quid pro quo" distinguishes this claim, which alleges discriminatory treatment culminating in tangible employment action, *i.e.*, disciplinary write-ups and termination, from Ms. Macias's hostile work environment claim, which alleges offensive conduct in general. *See Ellerth*, 524 U.S. at 753-54.

had her disciplined and fired. The evidence does not support this theory. Ms. Macias testified that Mr. Borjas never made any sexual advance towards her, such as ask her out on a date, ask to kiss or touch him, or do anything—other than work-related tasks. Aplee. App. at 195. Moreover, she acknowledged the validity of all disciplinary actions against her except her last, and no evidence ties that or any other infraction to her refusal to submit to sexual conduct. *See Helm v. Kansas*, 656 F.3d 1277, 1287 (10th Cir. 2011) (requiring a "strong causal nexus between the supervisor's harassment and the tangible employment action"). We thus affirm the grant of summary judgment to SWC on the quid pro quo claim.

## 3. Retaliation

Ms. Macias's retaliation claim finds a similar fate. Under the relevant analytical framework, she was required to show "(1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (internal quotation marks omitted). Ms. Macias cannot make the first showing because no evidence shows she engaged in protected opposition to discrimination. Indeed, she did not complain to anyone about Mr. Borjas, except to ask to be moved to a different shift because he was making her miserable and she was tired of him. But in making that request, she never suggested he was discriminating against her, and she never explained how he was making her miserable; instead, she testified that she merely

had been complaining about him. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (holding that to qualify as protected opposition, the employee need not use any "magic words" but must convey her concern that the employer has engaged in an unlawful discriminatory practice; "[g]eneral complaints . . . will not suffice[]"). Absent some indication that Ms. Macias was complaining about discrimination, the evidence is insufficient to make a prima facie case of retaliation, and the district court was therefore correct to grant summary judgment to SWC.

### C. Cross Appeal

Finally, SWC contends the district court abused its discretion in declining supplemental jurisdiction over the state-law claims. *See Dahl v. Dahl*, 744 F.3d 623, 629 (10th Cir. 2014) (reviewing denial of supplemental jurisdiction for abuse of discretion). If we had affirmed the district court's summary judgment ruling as to all the federal claims, the district court's decision declining supplemental jurisdiction would have been sound. *See* 28 U.S.C. § 1367(c)(3) (authorizing remand of state-law claims where district court has dismissed all claims over which it has original jurisdiction). However, because we reverse the grant of summary judgment on the hostile work environment claim, the legal predicate for the district court's decision no longer exists. We therefore vacate that portion of the district court's judgment declining supplemental jurisdiction and remanding the state-law claims to state court. *See Johnson v. Riddle*, 443 F.3d 723, 732 (10th Cir. 2006).

## III.  CONCLUSION

We reverse the district court's grant of summary judgment on the hostile work environment claim and remand that claim for trial.  We also vacate the district court's decision declining supplemental jurisdiction over the state-law claims.  In all other respects, the district court's judgment is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge